Jane DOE,* Individually and as Mother and Natural Guardian of Mary Doe *, an Infant, Plaintiff,

v.

COUNTY OF SUFFOLK, Janet Altman and Marjory Freedman, Defendants.

No. 79 C 1991.

United States District Court, E. D. New York.

July 14, 1980.

* Names of the parties have been changed.

Edward S. Raskin, Deer Park, N. Y., for plaintiff.

Howard E. Pachman, Suffolk County Atty. by Anton J. Borovina, Deputy County Atty., Hauppauge, N. Y., for defendants.

## MEMORANDUM AND ORDER

GEORGE C. PRATT, District Judge:

### IS A SOCIAL WORKER ABSOLUTELY IMMUNE FROM A SUIT FOR DAMAGES RESULTING FROM HER HAVING FILED A PETITION CHARGING PLAINTIFF WITH CHILD NEGLECT?

That is the central question presented by defendants' motion for dismissal or summary judgment in this 42 U.S.C. § 1983 action.

Defendant Altman[1] claims to be entitled to the same absolute immunity accorded a prosecutor under *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), and *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), for having filed and prosecuted a petition in Suffolk County Family Court charging plaintiff with "neglect of her daughter" under Article 10 of New York State's Family Court Act. Plaintiff disagrees and argues that the only immunity available to defendant Altman is the qualified good faith defense defined by the Supreme Court in *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), and *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975).

The courts, pushed by grave concerns of public policy and the impetus of common law tort doctrine, have recognized immunities in a variety of § 1983 suits, although such immunities are without support in either the language or the history of the statute. Absolute immunity, that is, freedom from damage liability for acts done within the scope of a public employee's proper function, regardless of motive or

---

1. This discussion refers to defendant Altman. Defendant Freedman, Altman's superior, may not be held liable on a respondeat superior theory. See *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A fair and liberal reading of the complaint, however, would permit the inference that Freedman and Altman acted jointly, so that what is said about Altman applies equally to Freedman.

Defendants raise an additional argument to the effect that plaintiff is "issue precluded" by her failure to appeal from the Family Court's preliminary order of temporary removal of the child, so that the issue of probable cause is no longer open for dispute. It is doubtful that failure to appeal from a preliminary order is sufficient to invoke collateral estoppel principles in a civil rights action. Normally, "a judgment must be final in order to have res judicata or collateral estoppel effect". 1B *Moore's Federal Practice* ¶ 0.416[3] (2d Ed.1974). In the present context the full impact of the Family Court procedures can be assessed only after a trial.

Defendants also move to dismiss under FRCP 12(b) for failure to state a claim. The gist of the complaint is that the defendants Altman and Freedman set about to deprive plaintiff of the custody of her daughter, and for that purpose "did lay the aforementioned petition against the plaintiff * * *, knowing full well that the plaintiff * * *, was not and is not guilty of the alleged child abuse, knowing full well that they could not successfully prosecute the petition against the said plaintiff * * *, and knowing full well that ultimately the said petition must be dismissed." The claim sounds essentially as malicious prosecution. As pleaded, a sufficient constitutional claim is made out against defendants Altman and Freedman; however, as against the County of Suffolk, there are no allegations that the particular acts of defendants Altman and Freedman were mandated by a policy of the county or were designed to implement county policy. Absent such allegations, there is nothing to show that the county caused plaintiff to be deprived of a constitutional right in violation of § 1983. Consequently, the claim as against the County of Suffolk must be dismissed. *Monell v. Department of Social Services, supra.*

intent, has been accorded to state legislators, *Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951); regional legislators of a planning district, *Lake Country Estates v. Tahoe Regional Planning Agency*, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979); judges, *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); and prosecutors "in initiating a prosecution and in presenting the State's case", *Imbler v. Pachtman, supra,* 424 U.S. at 431, 96 S.Ct. at 995. Most other public officials may claim a qualified, good faith immunity.

Absolute immunity is intended to protect defendants from the burden even of defending a lawsuit. In the Second Circuit at least, the principle has been extended to protect against equitable as well as damage actions. *Star Distributors, Ltd. v. Marino,* 613 F.2d 4 (CA2 1980). A more limited protection against damages liability for their constitutional torts is accorded most other public officials by the principle of qualified immunity, which provides that a public officer will not be held liable in damages for the constitutional wrongs he commits so long as he meets both the subjective and objective tests of good faith, that is, he must have believed in his own mind that his conduct was lawful, and his belief must have been reasonable in the light of settled principles of constitutional law. *Scheuer v. Rhodes, supra* ; *Wood v. Strickland, supra.*

Plaintiff concedes that defendant Altman, charged with unconstitutional conduct in her capacity as a social worker, is entitled to assert a defense of good faith immunity.[2] The principal issue, therefore, is whether defendant Altman is absolutely immune from the liability plaintiff seeks to impose. In other words, even assuming that the social worker maliciously instituted the child neglect proceeding against plaintiff for the purpose of having custody of

her daughter temporarily taken from her, would the social worker, despite her lack of good faith, be entitled to the shield of absolute immunity?

Defendant Altman claims that, like a prosecutor, she began a prosecution and presented evidence against plaintiff, and, therefore, like a prosecutor she should be absolutely immunized from damage liability. Plaintiff urges that the position of defendant Altman is more akin to that of a police officer who is not granted a prosecutor's discretion in instituting a criminal prosecution or in presenting evidence at trial, but instead is obligated by his office to report, prosecute, and present evidence on all violations of law which come to his attention.

■ *Butz v. Economou, supra,* teaches that the type of immunity available to this defendant turns not upon the title of her office, but upon the function she was performing when she committed the alleged unconstitutional acts.[3]

What function, then, was defendant Altman performing when she allegedly violated plaintiff's constitutional right to be free of malicious prosecution and her right to maintain custody of her own child? Defendant Altman entered the picture when the District Attorney referred a felony proceeding to plaintiff's employer, the Suffolk County Department of Social Services, Child Protective Services Unit. The felony proceeding had been brought against plaintiff's husband based on plaintiff's complaint to the police that her husband had sexually molested their daughter on the night of February 4, 1977. The district attorney referred the proceeding to the Child Protective Services Unit, which immediately worked out an agreement whereby the father would not meet with his daughter unless another adult was present.

---

**2.** Indeed, the core of plaintiff's complaint is defendant's malicious act, her bad faith in instituting and prosecuting an allegedly groundless proceeding charging plaintiff with child neglect.

**3.** True, *Butz* was a federal case, brought under the *Bivens* principle, *Bivens v. Six Unknown*

*Federal Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), rather than under § 1983, but the Supreme Court there found no difference in the applicable immunity principles resulting from a defendant's position as a state or federal official.

On April 4, 1977, defendant Altman, acting for the Child Protective Services Unit, filed Family Court petitions against the husband and plaintiff, for child abuse and child neglect. Defendant Altman at the same time moved the Family Court for a preliminary and temporary order granting temporary custody of plaintiff's daughter to the Commissioner of the Department of Social Services.

On April 8, 1977 a hearing was held before a family court judge, who granted the motion for a temporary custody order and scheduled trial for May 11, 1977. The daughter was removed from her parents' home and placed in foster care. On May 11, 1977, the County Attorney requested and received an adjournment of the trial to June 27, 1977. At trial on June 27, 1977, the County Attorney withdrew the petition against plaintiff. The judge ordered that the daughter be returned to plaintiff as soon as the husband moved out of the family home, and further ordered plaintiff, the husband and the daughter to undergo psychiatric therapy. The daughter was returned to her mother the same day, June 27, 1977.

On February 3, 1978, the same family court judge found the daughter to be an "abused child" under Article 10 of the Family Court Act, allowed the husband to return to the family home, and directed the Department of Social Services to supervise the family household. Such supervision was provided until February 22, 1979, when "the family household moved to whereabouts unknown".

Defendant Altman's authority as a social worker derives from New York's Social Services Law. Title VI, entitled "Child Protective Services", was enacted in 1973 to provide more effective protection to abused and maltreated children in this state. One of its purposes was to "encourage more complete reporting of suspected child abuse and maltreatment and to establish in each county of the state a child protective service capable of investigating such reports swiftly and competently and capable of providing protection for the child or children from further abuse or maltreatment and rehabilitative services for the child or children and parents involved." Social Services Law § 411.

The statute encourages, even requires, a wide variety of persons to report suspected child abuse, § 413; permits some of the written reports from persons or officials to be admitted in evidence; and authorizes various officials, including "a designated employee of a city or county Department of Social Services", to take a child into protective custody without consent of the parent whenever continuing the child in the parent's custody presents an "imminent danger" to the child's health. § 417(1).

Section 423 requires every local Department of Social Services to establish a "child protective service" which "shall be the sole public agency responsible for receiving and investigating" all reports of child abuse or maltreatment. A child protective service is required to receive reports, on a 24 hour, 7 day a week basis, of all suspected child abuse or maltreatment; to keep records; to notify various agencies; to commence an appropriate investigation which shall include an evaluation of the environment of the child and a determination of the risk to the child if it should continue to remain in the existing home environment; when necessary to take a child into protective custody; to offer services to the family; to initiate appropriate family court or criminal court actions; to assist the family court or criminal court during all stages of the court proceeding, and to perform a variety of other functions.

In § 419 of the Social Services Law the state legislature granted a qualified, good faith immunity to persons acting under the statute:

Any person, official, or institution *participating in good faith* in the making of a report, the taking of photographs, or the removal or keeping of a child pursuant to this title *shall have immunity* from any liability, civil or criminal, that might otherwise result by reason of such actions. For the purpose of any proceeding, civil or criminal, the good faith of any person

required to report cases of child abuse or maltreatment shall be presumed. (emphasis added)

In this case, defendant Altman received a report of suspected child abuse, investigated the circumstances, prepared and submitted to the family court the appropriate petitions, appeared at the preliminary hearing, made herself available to testify, but was not called for that purpose, and met and conferred with the participants. In light of the New York statutory scheme, defendant Altman had little discretion in the matter. She was required to proceed with the investigation and the proceeding.

Like a prosecutor she begins a prosecution, but, unlike a prosecutor, she has virtually no discretion in the matter. Given information warranting such a prosecution she must proceed. Once in court, she does not try the case; that duty devolves upon an attorney employed by the county. Thus, defendant Altman's function is more like that of a policeman than a prosecutor. She learns of a violation, files a complaint (petition), and makes herself available to testify. Once the petition is filed, it is for others to determine how far the matter will proceed.

Under the circumstances, it is apparent that a social worker, who by New York State legislation is only entitled to a good faith immunity, is entitled to no more than a qualified good faith immunity in the constitutional context of § 1983. As a social worker employed in the Suffolk County Child Protective Service, defendant Altman is not absolutely immune from suit for a constitutional violation under § 1983. Consequently, defendants' motion for summary judgment is denied.[4]

### CONCLUSION

For reasons set forth in footnote one, defendants' motion to dismiss is granted insofar as the action is brought against defendant County of Suffolk. Defendants' motions to dismiss and for summary judgment are denied in all other respects.

4. As is almost always the case, the question of "good faith" presents a triable issue of fact.

Counsel shall attend a status conference before the court on Wednesday, August 6, 1980 at 9:00 a. m. for the purpose of scheduling any remaining discovery and establishing a trial date.

SO ORDERED.