**Michelle BUCHANAN, Plaintiff,**

**v.**

**Janet FORD, a Caseworker Employed by Chenango County Social Services, in her individual capacity only, Defendant.**

**No. 85–CV–1248.**

United States District Court, N.D. New York.

June 19, 1986.

Ronald R. Benjamin, Binghamton, N.Y., for plaintiff.

Levine, Gouldin & Thompson, Binghamton, N.Y. (Michael R. Wright, of counsel), for defendant.

MUNSON, Chief Judge.

## MEMORANDUM–DECISION AND ORDER

Plaintiff, the mother of an infant boy, brought this action under 42 U.S.C. § 1983, alleging that defendant, a caseworker for Chenango Valley Social Services, wrongfully caused plaintiff to be separated from her son. Defendant moves for dismissal or summary judgment.

## I. FACTS

The following facts are undisputed for the purpose of this motion. While visiting at plaintiff's home, defendant discovered that plaintiff's son was injured. Defendant took plaintiff and her son to a doctor. Defendant led the doctor to suspect that the injury was the result of abuse, but defendant knew that there had been no abuse. The doctor had the boy admitted to the hospital in order to keep him in protective custody until Family Court proceedings could be instituted. At a Family Court preliminary proceeding, defendant gave false testimony, and the judge placed the boy in a foster home pending a hearing of neglect charges against the plaintiff. The judge also ruled that the plaintiff would have "liberal and reasonable visitation" while her son was in the foster home. During that time defendant allowed plaintiff two visits a week. The Family Court later dismissed the neglect charges.

Plaintiff claims that she is entitled to damages because defendant (1) wrongfully caused plaintiff's son to be placed in protective custody; (2) gave false testimony in Family Court; and (3) gave plaintiff less than "liberal and reasonable visitation" when her son was in the foster home. Defendant argues that the first claim is barred by absolute official immunity, that the second is barred by witness immunity, and that the third is barred by both absolute and qualified official immunity.

## II. DISCUSSION

### A. THE PLACEMENT OF PLAINTIFF'S SON IN PROTECTIVE CUSTODY

The parties' arguments focus on whether defendant, as a caseworker in a child-protective agency, has absolute or qualified

("good faith") immunity for acts that she performs under New York's child protection laws. Defendant urges the court to follow *Whelehan v. County of Monroe,* 558 F.Supp. 1093, 1099–1101 (W.D.N.Y. 1983), which held that child-protective workers have absolute immunity, while plaintiff relies on *Doe v. County of Suffolk,* 494 F.Supp. 179 (E.D.N.Y.1980), which held that a child-protective worker has good-faith immunity for damages resulting from the filing of a neglect petition.

Section 1983 is silent on the issue of official immunity. As a result, the Supreme Court has looked to non-federal law and to public policy in deciding whether to grant absolute or good-faith immunity from § 1983 liability for various state functions. Initially, the Court ascertains whether a non-federal source of law provides for or implies absolute immunity for the official functions in question. If so, the Court then determines whether public policy should permit granting absolute immunity under federal law as well. *See, e.g., Imbler v. Pachtman,* 424 U.S. 409, 424, 96 S.Ct. 984, 992, 47 L.Ed.2d 128 (1976).

In conducting the initial step of this analysis, the non-federal source of law that the Court has consulted first has been American and English common law. *See Malley v. Briggs,* —— U.S. ——, 106 S.Ct. 1092, 1096–97, 89 L.Ed.2d 271 (1986); *Tower v. Glover,* 467 U.S. 914, 921, 104 S.Ct. 2820, 2825, 81 L.Ed.2d 758 (1984); *Pulliam v. Allen,* 466 U.S. 522, 529, 104 S.Ct. 1970, 1974, 80 L.Ed.2d 565 (1984); *Imbler v. Pachtman,* 424 U.S. at 421, 96 S.Ct. at 990–91; *Scheuer v. Rhodes,* 416 U.S. 232, 238–49, 94 S.Ct. 1683, 1687–93, 40 L.Ed.2d 90 (1974); *Tenney v. Brandhove,* 341 U.S. 367, 372–75, 71 S.Ct. 783, 786–88, 95 L.Ed. 1019 (1951). In *Tower v. Glover* the Court also noted that the state had "given no indication, by statute or appellate deci-

sion," that the official functions in question had absolute immunity. 467 U.S. at 922, 104 S.Ct. at 2826. But in the other cases the Court did not discuss state law. The reason for this is apparently that state law did not set the level of immunity in those cases either. Had there been an applicable state-law standard, the Court would have discussed it for two reasons. First, the official functions at issue in § 1983 cases are created by the state, and state law—including statutes—is thus more authoritative than the general body of common law. Second, when state law provides for qualified immunity, the court is relieved of the task of deciding whether federal public policy permits absolute immunity. That task is unavoidable when the state asserts absolute immunity, because such a drastic limitation on federal remedies may violate the supremacy clause of the Constitution. *See Pulliam v. Allen,* 466 at 543–44, 104 S.Ct. at 1981–82; *Martinez v. California,* 444 U.S. 277, 284 & n. 8, 100 S.Ct. 553, 558 & n. 8, 62 L.Ed.2d 481 (1980). But if the state has decided that qualified immunity is enough, there appears to be no reason not to apply it. Thus, examining state immunity law before other sources of law is consistent with the approach in the Supreme Court precedents.

■ In the present case New York law disposes of the immunity question at the first stage of the analysis. Section 1024(c) of the Family Court Act (McKinney's 1983 & Supp.1986) provides that an employee of a child-protective agency who, "acting in good faith," causes a child to be placed in protective custody, is immune from civil liability. Because New York has granted only good-faith immunity, it is unnecessary to determine whether public policy would support a grant of absolute immunity.[1]

Defendant has asserted her good faith but has not produced evidence to substantiate the assertion. An issue of fact thus

1. In *Doe v. County of Suffolk* the court relied in part on New York's qualified immunity statute, but apparently did not think it was dispositive, because the court also considered public policy. *See* 494 F.Supp. at 182–83. *Whelehan v. County of Monroe* did not consider the statute.

remains, and defendant's motion is denied insofar as it concerns the placement of plaintiff's child in protective custody.

## B. DEFENDANT'S TESTIMONY IN FAMILY COURT

■ Witnesses in judicial proceedings have absolute immunity from liability under § 1983 for damage that their testimony causes. *Briscoe v. Lahue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). Therefore, this aspect of the complaint is dismissed.

## C. DEFENDANT'S DETERMINATION OF VISITING RIGHTS

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). If an official establishes "the objective reasonableness of [his] conduct, as measured by reference to clearly established law," he can have summary judgment. *Id.*

■ Defendant contends that allowing plaintiff to visit with her son twice a week was objectively reasonable, because the regulations of the New York Department of Social Services require only one visit every two weeks between parents and "children in foster care placement whose permanency planning goal is discharge to parents or relatives." N.Y. Admin.Code, tit. 18 § 430.12(d)(1)(1985). This regulation was in force at the time of the events alleged in the complaint. *See* Attachment to Deft. Mmrdm. Plaintiff has not cited a different "clearly established" legal standard by which to evaluate defendant's conduct. Therefore, because defendant met the standard that she cites, she is granted summary judgment on the claims concerning visitation.