Elizabeth **REYNOLDS, by her grandmother and next friend, Elizabeth Jane REYNOLDS, and Elizabeth Jane Reynolds and Henry Reynolds, individually, Plaintiffs,**

v.

Catherine **STRUNK; Kevin Strunk; Noah Weinberg, individually and as Commissioner of the Department of Social Services for Rockland County; the Rockland County Department of Social Services; Julie Nimal; Joan Berger; Cathy Nugent; Sheila Sklar; and Carol Barbash, Defendants.**

No. 87 Civ. 7136 (LBS).

United States District Court,
S.D. New York.

June 23, 1988.

Bodell & Gross (Gerald E. Bodell, David H. Berman, of counsel), Larchmont, N.Y., for plaintiffs.

Granik, Silverman, Sandberg, Campbell & Nowicki (David W. Silverman, Jeffrey S. Rovins, of counsel), New York City, for defendants Weinberg, Rockland Cty. Dept. of Social Services, Nimal, Berger, Nugent, and Barbash.

Gordon & Silber, P.C. (David Henry Sculnick, of counsel), New York City, for defendant Sklar.

Catherine Strunk, pro se.

Kevin Strunk, pro se.

## OPINION

SAND, District Judge.

Plaintiffs Elizabeth Jane Reynolds and Henry Reynolds are the grandparents and custodians of the four-year-old plaintiff Elizabeth Reynolds. They bring suit individually and on behalf of Elizabeth Reynolds against Catherine Strunk, the child's mother, Kevin Strunk, her husband, and the following individuals and agencies who played a role in matters relating to the care and custody of Elizabeth Reynolds: Noah Weinberg, individually and as Commissioner of the Department of Social Services for Rockland County; the Rockland County Department of Social Services; Julie Nimal, Joan Berger, and Cathy Nugent, employees of the Rockland County Department of Social Services; Sheila Sklar, a psychologist alleged to be a part-time employee of the Rockland County Department of Social Services; and Carol Barbash, Assistant County Attorney.

The complaint alleges ongoing controversies between plaintiffs and Catherine Strunk with respect to custody and visitation rights for the child. Underlying these proceedings are the plaintiffs' claims that the child was sexually abused by her mother, Mrs. Strunk, and the Strunks' counter-allegations that the child was subjected to sexual abuse by her grandparents. These custody, visitation, and child abuse matters are, and have been, the subject of extensive proceedings in the local courts where, of course, such matters properly belong.

The gist of plaintiffs' allegations against the defendants other than the Strunks is that the actions they took or failed to take in the discharge of their official duties constituted a willful violation of the plaintiffs' rights under the Fourteenth Amendment and 42 U.S.C. § 1983. The Strunk defendants move *pro se* to dismiss, while all other defendants move for summary judgment.

### 1. SHEILA SKLAR (SIXTH CAUSE OF ACTION)

Sheila Sklar is alleged to have been "in the part time employ of defendant Rockland County Department of Social Services ..." [hereinafter "DSS"]. Complaint ¶ 14.

It is further alleged that in this capacity she "performed an examination of the child, Elizabeth, and reported that she had not been abused but had been 'programmed' by plaintiff grandmother to say she was abused." Complaint ¶ 74. As a result of this examination, said to have been performed "in a negligent and improper manner," the "plaintiff grandparents and the child suffered trauma and hurt" and "the County Department permitted and encouraged unsupervised visitation between defendant Catherine Strunk and the child Elizabeth" which resulted in further sexual abuse of the child. Complaint ¶¶ 75–77.

Although the complaint alleges, ¶ 79, that the actions of Dr. Sklar constituted a willful violation of plaintiffs' rights and that the defendants acted in concert with each other to cause such violation, plaintiffs' counsel candidly conceded at oral argument that there was no basis for any claim that Dr. Sklar filed a report which she knew to be incorrect. In the light of this representation which made it clear that the sole claim, if any, which could be asserted against Dr. Sklar was a negligence claim over which this Court lacked jurisdiction,[1] the action against Dr. Sklar was dismissed in open court.

### 2. CAROL BARBASH (SEVENTH CAUSE OF ACTION)

■ Defendant Barbash is the Assistant County Attorney who "was responsible for and did in fact present the sex abuse case" against the grandparent plaintiffs which sought removal of the child from their home. Complaint ¶¶ 82–83. The complaint alleges further that "[s]aid removal was sought notwithstanding the fact that defendants County Department, Niemal [sic] and Barbash had information to the effect that said plaintiffs were not guilty of sexual or other abuse." Complaint ¶ 84. It is further alleged that the actions of defendant Barbash were unlawful, violative of plaintiffs' civil rights and were taken in concert with the other defendants to violate plaintiffs' rights. The allegation of "willful violation" contained in the sixth cause of action against Dr. Sklar, Complaint ¶ 79, is absent here.

In her affidavit in support of her motion for summary judgment, Ms. Barbash avers that after a conference with the appropriate youth officer and case workers "it was determined that the identity of the perpetrator could not be made; and, in accordance with the Family Court Act Sections 1012 and 1046, a petition was filed against the Strunks as parent and stepparent and the Reynolds, who had custody of the infant, Elizabeth Reynolds." Barbash Aff. ¶ 5. Ms. Barbash further states:

With respect to the claim that visitation by the child's natural mother was wrongful, the court made its determination as to the continued coustody [sic] by the Reynolds and the visitation by the natural mother as a result of testimony of many experts. As an advocate, my charge is limited to the protection of the infant. When faced with a report that the perpetrator cannot with certainty be found, and that it would be best, in the psychiatrist's opinion, to remove the child from the "war zone", your deponent submits that any advocate, intent on preserving the rights of the child, would have introduced testimony, produced witnesses and partook of cross-examination to be solely and exclusively in the best interests of the child.

With respect to all of the causes of action that are realleged, your deponent participated in no conspiracy or cabal to violate anyone's civil rights

....

Barbash Aff. ¶¶ 12 and 13.

In her affidavit in opposition, plaintiff Elizabeth Reynolds alleges that:

At the end of the trial, even after Judge Bergerman had made his decision and

---

**1.** We note however, that the United States Supreme Court has agreed to consider whether the alleged reckless failure by a county welfare agency to take action to protect an abused child constitutes deprivation of a liberty interest under 42 U.S.C. § 1983. *See DeShaney v. Winnebago County Dep't of Social Services,* 812 F.2d 298 (7th Cir.1987), *cert. granted,* —— U.S. ——, 108 S.Ct. 1218, 99 L.Ed.2d 419 (1988).

Catherine was found guilty, Carol Barbash stood up, turned towards my husband and me and loudly said while staring at us, "I still do not like the Reynolds' home and the County will try and get permanent custody of the child."

Reynolds Aff. ¶ 20.

Mrs. Reynolds also alleges that "Carol Barbash was always vehement in Court about getting the child out of our home for no purpose and for no good reason except to cover up for the County ... She was vicious to our family, she would never greet us, she always acted as though she hated us." Reynolds Aff. ¶ 21. Clearly plaintiffs suffered no cognizable injury by virtue of these remarks. If they are offered to show that Barbash was improperly motivated in her actions as an attorney, this issue relates to the defendant's claim of prosecutorial immunity. Barbash asserts that the suit against her is barred because of the doctrine of prosecutors' immunity from suits based on the performance of their duties. Plaintiffs' total response to the assertion of prosecutorial immunity is to ignore this issue entirely and to deal solely with their argument that the social worker defendants in this case are entitled to only a qualified immunity under Family Court Act § 1024(c) and *Doe v. County of Suffolk*, 494 F.Supp. 179 (E.D. N.Y.1980), for actions taken in good faith. *See* Plaintiffs' Brief in Opposition to Motion for Summary Judgment ("Plaintiffs' Brief"). Plaintiffs' failure to respond to the defense of prosecutorial immunity, despite the fact that the issue was raised and briefed by the defendants, raises serious questions about plaintiffs' motivation in naming as defendant the attorney who was representing the County in the ongoing custody and visitation proceedings. *See* Memorandum Submitted in Support of Defendants' Motion for Summary Judgment at 22–25 *citing, inter alia, Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).

That Carol Barbash is entitled to absolute immunity for her actions as County Attorney is clear. *Rudow v. City of New York*, 822 F.2d 324 (2d Cir.1987). There-

fore, the complaint against defendant Barbash is dismissed.

**3. NOAH WEINBERG**

This defendant is sued individually and in his capacity as Commissioner of the DSS. Paragraph 15 of the complaint alleges: "Defendant Noah Weinberg is, upon information and belief, Commissioner of Social Services for the County of Rockland and as such is responsible for the actions of the Rockland County Department of Social Services...." There is literally no other specific reference to Commissioner Weinberg in the entire complaint. The repeated allegation that particular defendants acted in concert with other defendants can hardly be said to allege a grounds upon which liability is sought to be imposed on the Commissioner. Therefore, as to him, the complaint is dismissed.

**4. THE DSS EMPLOYEES**

Defendants Julie Nimal, Joan Berger, and Cathy Nugent are alleged to be present or former employees of defendant DSS.

### a. *Julie Nimal (Fourth Cause of Action)*

As to defendant Nimal, the complaint alleges that she "without sufficient cause or information, on or about March 9, 1987, caused to be filed unfounded child abuse petitions against plaintiffs ... requesting removal of the child from their care." Complaint ¶ 48. In Nimal's verified petition filed in Family Court, she stated that her "investigation of a child Protective Services caseworker" was the source of her information and grounds for her belief. Nimal Petition, Charging Paragraph. Nimal is said to have testified at the hearing on the petition that "her information had come exclusively from the child's mother...." Complaint ¶ 51. The complaint alleges further that subsequent interviews by Nimal with the child's mother negated the earlier accusation but that "notwithstanding this overwhelming evidence to the effect that the plaintiffs committed no sexual abuse, defendants Niemal [sic] and the Rockland County Department of Social Ser-

vices nevertheless brought the aforesaid sexual abuse charge against plaintiff grandparents...." Complaint ¶ 56.

Nimal and the County refused to withdraw the charges even after the Court raised questions concerning the contradiction between Nimal's "testimony exonerating plaintiffs and the County's legal position." Complaint ¶¶ 56–57. It is further alleged that the charges against plaintiffs were completely unfounded, a fact which was known or should have been known to defendant Nimal and the DSS; that Nimal's testimony "demonstrates without question that both she and the County Department knew that plaintiff grandparents were not guilty of the charges ...."; all of which are claimed to be a willful violation of plaintiffs' rights. Complaint ¶¶ 59–60.

Mrs. Reynolds alleges in her affidavit submitted in opposition to defendants' motion for summary judgment that Nimal called her on February 18, 1987 to advise that she was now handling the case for the courts and was rude, arrogant and "treated us like animals." Reynolds Aff. ¶ 18. Nimal also allegedly refused to listen to matters occurring more than six months before, when she had not yet been assigned to the case. *Id.* Mrs. Reynolds states that her other children also reported that they tried unsuccessfully to convey to Nimal information favorable to plaintiffs and adverse to Catherine Strunk. Reynolds Aff. ¶ 19.

In her affidavit in support of the motion for summary judgment, defendant Nimal states that on February 17, 1987, "I was assigned the investigation of a claim of child abuse and commenced an immediate inquiry as required by not only our Department but by state law." Nimal Aff. ¶ 3. Ms. Nimal cites her receipt of a report dated February 19, 1987 from Ruth Cohen, M.D., a psychotherapist who had been treating the child since September 1986, which indicated that the child was "an unreliable historian ... [and that she] appeared to be a confused and freightened [sic] young lady who was under considerable stress." *See* Nimal Aff. ¶ 4 and attached Exhibit A, Letter of February 19, 1987 from Ruth Cohen, M.D. Nimal states that she received a memorandum of March 16, 1987 from Alan J. Tuckman, M.D., a forensic psychiatrist affiliated with the Rockland County Forensic Mental Health Service, in which Dr. Tuckman recommended that Elizabeth be removed from her grandparents' home during the pendency of court proceedings:

I understand that all adult parties in the case "passed" the polygraph tests. (Ms. Strunk was retested). Under these circumstances, *and* considering the intense animosity which has occurred between mother and daughter, I feel that the only reasonable alternative, at this time, would be to remove the child from her grandmother's care. Since we are presently unable to identify a perpetrator, we *must* consider that someone may be influencing, "programming" or "brainwashing" this child, with no actual abuse having occurred, or something akin to sexual abuse occurred (manipulation) with programming. Under these circumstances, we must consider that the child is in as much danger, emotionally, in her grandmother's home, as she would be, physically, in any other home (mother or grandmother) ...

At present, we muct [sic] protect this child from further *emotional,* and potentially physical, harm and all of these parties *must* learn that the *war* must be set aside and the child's best interests be considered paramount. Then, further evaluations of all parties, including psychological testing, can be accomplished, and a trial can be held. *But,* during the pendency of these actions, at least the child will be removed from the "war zone".

Nimal Aff. ¶ 6 and attached Exhibit C, Memorandum from Alan J. Tuckman, M.D. Nimal states further that her filing of verified petitions in the case was "in accordance with" state law which states that:

proof of injuries sustained by a child or of the condition of a child of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the care of such

child shall be prima facie evidence of child abuse or neglect, as the case may be, of the parent or other person legally responsible; ...

N.Y.Family Court Act, § 1046(a)(ii). In addition, Nimal cites the Family Court judge's decision denying the motion to dismiss in which the Court found that

all four [of] the respondents were responsible for the care of the child Elizabeth Reynolds during the relevant periods of time when the injuries to the child could have occurred ... [and] that the County has made out a prima facie case as against all four respondents ... Once a prima facie has been established the burden of proof shifts to each of the respondents to offer a satisfactory explanation in order to rebut the presumption.

Nimal Aff. ¶ 10 and Transcript of Proceedings in Rockland County Family Court ["Transcript of Proceedings"], May 12, 1987, at pages 5–6.

### b. *Berger and Nugent (Fifth Cause of Action)*

The complaint alleges that these DSS employees, by virtue of their positions with the Child Protective Services unit, "had responsibility for investigation of charges of sexual abuse"; they failed to investigate properly the charges of sexual abuse made by the plaintiff grandparents against their daughter; as a result of such "improper investigation," the complaints initiated by the plaintiffs were dismissed and the case closed. Complaint ¶¶ 65–67. Plaintiffs contend further "[t]hat said defendants permitted and encouraged unsupervised visitation between the child and defendant Catherine Strunk which resulted in sexual abuse of said child," Complaint ¶ 68; "[t]hat defendants Berger and Nugent knew or should have known that such actions on their part exposed the child Elizabeth to the danger of sexual abuse," Complaint ¶ 69; and "that notwithstanding such knowledge, said defendants performed such acts ... without regard for said child's rights and without providing proper protection for her and in willful violation of Plaintiffs' rights." Complaint ¶ 70.

In the affidavits submitted in support of their motion for summary judgment, Berger and Nugent list the specific events in the procedural history of this case. *See generally* Berger Aff. ¶¶ 4–5; Nugent Aff. ¶ 5. In early April 1984, the Child Protective Services unit "received an informal report ... that the infant, Elizabeth Ann Reynolds, was being neglected." Berger Aff. ¶ 4(i). Defendant Berger investigated this report and "found that there was no basis for neglect of the child." *Id.*[2] The Superior Court of Bergen County (New Jersey) granted a temporary order of custody to the grandmother in July, 1984. Berger Aff. ¶ 4(ii). The custody and visitation battle between the grandparents and the mother continued over the next two years during which the Reynolds retained custody and Catherine Strunk was granted supervised visitation rights by the Rockland County Family Court. *See id.* at ¶ 4(iii)–(vi).

Berger states further that as part of the governing procedures, the Family Court of Rockland County ordered that the Probation Department conduct an investigation of Mrs. Reynolds' charges of sexual abuse. *Id.* at ¶ 4(vii). When that investigation was completed in August 1986, the Family Court directed the Child Protective Service to investigate the situation. *Id.* But Berger describes her agency's involvement as preceeding this order because she states that "on June 16, 1986, the Child Protective Service received the sexual abuse allegations made by Mrs. Reynolds" and the case was assigned to defendant Berger. Berger Aff. ¶ 4(viii) and Defendants' Rule 3(g) Statement of Uncontested Facts ¶ 1(i). The following day, "investigations were commenced, [Berger] interviewed the child and

---

**2.** The evaluation to which Berger refers in her affidavit, Exhibit A, makes no mention of a claim of sexual abuse. The behavior complained of is as follows: "Grandmother says there was no heat ... Grandmother says feedings are off schedule. Mother has child up all hours of the nite. People come in and out of room; no crib, child sleeps with mother." The report concludes that "reporter had no real concerns for the child who appeared healthy." Exhibit A to Berger Aff.

Mrs. Reynolds but could not engage the child in conversation." Berger Aff. ¶ 4(ix). That same day, the Community Mental Health Center of Rockland County, which had been contacted by the Probation Department during its investigation, issued a report which summarized an initial evaluation of the child that had been conducted on April 22, 1986 to determine the suitability of the Child Development Center for Elizabeth. *Id.* and attached Exhibit B. The report notes Mrs. Reynolds' allegations of sexual abuse by Mrs. Strunk, but defers any diagnosis of the child.

Ms. Berger cites the conducting of additional examinations and reports: by Dr. Tuckman in July 1986, *supra,* recommending that Elizabeth be removed from her grandparents' home until the validity of the allegations could be determined conclusively; by defendant Nugent in August 1986; by Dr. Donald Winikoff in August 1986, finding "no evidence of trauma" (Berger Aff. ¶ 4(xiii) and attached Exhibit C); by defendant Dr. Sklar in August and September 1986, finding "no evidence to support the allegations but [finding] evidence to dispute them" (Berger Aff. ¶ 4(xiv)–(xvi) and attached Exhibit D); by Dr. Cohen in October, November, and December 1986 recommending family therapy and individual psychotherapy for Elizabeth but making no determination about the sexual abuse charges (Berger Aff. ¶ 4(xvii)–(xix) and attached Exhibits E and F); and, at the request of Dr. Cohen, by Leah Harrison, a nurse practitioner expert in sexual abuse, in early February 1987 (Berger Aff. ¶ 4(xx) and attached Exhibit G).

On February 17, 1987, the Child Protective Service received two reports of Elizabeth's sexual abuse and then defendant "Nimal was assigned to the case for further investigation." Berger Aff. ¶ 4(xxi). Further reports from Dr. Cohen were received that month, *id.* at ¶ 4(xxii)–(xxiii), and thereafter, legal proceedings were commenced by defendant Barbash. *Id.* at ¶ 5.

#### c. *Discussion*

Defendants Nimal, Berger and Nugent urge us to follow *Whelehan v. County of Monroe,* 558 F.Supp. 1093 (W.D.N.Y.1983), where the court reasoned that absolute immunity from suit could be extended under *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), to social services personnel "when acting within the scope of their child-protective duties ..." *See Whelehan,* 558 F.Supp. at 1101. In *Whelehan, id.* at 1099, Judge Elfvin rejected the analysis of *Doe v. County of Suffolk,* 494 F.Supp. 179 (E.D.N.Y.1980), which held that social workers charged with malicious prosecution for child protection proceedings are entitled to a qualified good faith immunity only. *Doe,* 494 F.Supp. at 183. Plaintiffs in the case before us, in opposition to the summary judgment motion, rely on *Doe* for the proposition that only a qualified immunity exists and that the issue of good faith is disputed so as to preclude summary judgment. Plaintiffs' Brief at 14.

In *Robison v. Via,* 821 F.2d 913 (2d Cir. 1987), the Second Circuit rejected the extension of absolute immunity to officials conducting a child abuse investigation, but held that a qualified immunity could be established by a defendant in three ways. *Id.* at 920–921. First, "if the court finds that it was not clear at the time of the official acts that the interest asserted by the plaintiff was protected by a federal statute or the Constitution," the defense should be sustained as a matter of law. *Id.* Second, the qualified immunity arises similarly as a matter of law even if the plaintiff's interest was protected by federal law "if it was not clear at the time of the acts at issue that an exception did not permit those acts." *Id.* at 921. Third, the immunity applies if "it was objectively reasonable for [the defendant] to believe that his acts did not violate those rights." *Id.* The court held that while the third scenario required the analysis of the facts of the individual case, summary judgment could be granted in favor of the defendant in that situation if

the defendant 'adduce[s] sufficient facts [such] that no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs, could conclude

that it was objectively unreasonable for the defendant[ ]' to believe that he was acting in a fashion that did not clearly violate an established federally protected right.

*Id. quoting Halperin v. Kissinger,* 807 F.2d 180, 189 (D.C.Cir.1986).

1. The Reynolds' Claims Against Defendant Nimal

■ We first apply the *Robison* analysis to the claims asserted by the Reynolds against defendant Nimal. As stated above, the plaintiffs must prove they have a federally protected right at issue. In their cause of action against defendant Nimal, the grandparents do not allege a specific right but claim generally that

... defendants insisted on bringing the charges and in seeking removal of the child from said plaintiffs' home, resulting in multiple physical injuries to the child and emotional and mental injury to the child and plaintiff grandparents.

... [E]ach of the actions of defendant Niemal [sic] was under color of state law, custom and usage.

... [Actions by] defendant Niemal [sic] and defendant County Department constituted a willful violation [sic] of plaintiffs' rights under the laws of the United States, particularly the 14th amendment as well as 42 USC § 1983 ...

Complaint ¶¶ 61–63. This case is not one in which social service agencies attempted to assume and retain custody of a minor child without appropriate procedural due process. *See, e.g., Duchesne v. Sugarman,* 566 F.2d 817 (2d Cir.1977) (deprivation of liberty interest in family privacy without hearing was held a violation of due process). This is a situation in which a court proceeding was conducted to determine who was abusing the child and how to ensure her safety. We interpret the complaint, therefore, to allege a claim by the Reynolds akin to malicious prosecution un-

der color of state law. Such a cause of action may arise under § 1983 "only if injuries of federal constitutional dimensions are involved." *Whelehan v. County of Monroe,* 558 F.Supp. at 1098.[3]

We find that the record sufficiently establishes Nimal's qualified immunity under *Robison* because it was objectively reasonable for her to believe that she violated no federal rights when she filed her verified petition. No professional who had examined the child or who had interviewed the parties conclusively stated before February 1987 that Elizabeth had been sexually abused. Nimal was assigned the case within two weeks after the abuse was first documented by Nurse Leah Harrison on February 6, 1987. Even at that point, no one—not even the psychotherapist who had been treating Elizabeth twice weekly for over a year—could determine who was abusing the child, but it was recommended that she be removed from the care of both the grandparents and the mother until a determination could be made. Memorandum of Alan J. Tuckman, M.D., *supra.* Nimal fulfilled her responsibility under N.Y. Family Court Act § 1046(a)(ii) to file the petitions charging the Strunks and the Reynolds. Indeed, the presiding Family Court judge found that a prima facie case of abuse had been made against both the grandparents and the Strunks. Transcript of Proceedings, May 12, 1987, at page 5. Nimal's filing of the petitions was the only way at that time to guarantee the child's interest in being free from harm. The procedure then to occur was for the charged individuals to attempt to rebut the presumption established by the prima facie case. *Id.* at page 6. It was not within Nimal's purview to evaluate the evidence, but rather, it was for the court to determine after a hearing if any party rebutted the statutory presumption. Although the court found that the Reynolds did rebut the presumption, it cannot be said that the outcome of that proceeding demonstrates

3. Four elements are necessary to establish the tort of malicious prosecution under New York law: (1) defendants commenced or continued a criminal proceeding against the plaintiffs; (2) the proceeding terminated in plaintiffs' favor; (3) there was no probable cause for the proceed-

ing; and (4) the proceeding was commenced with malice or improper motive. *Angel v. Kasson,* 581 F.Supp. 170, 175 (N.D.N.Y.1983). Similarly, these elements must be proven to sustain a § 1983 claim. *See Singleton v. City of New York,* 632 F.2d 185, 195 (2d Cir.1980).

that Nimal filed the petitions knowing that the charges against the grandparents were false, since none of the examining professionals could determine who was abusing the child.

Accordingly, after considering the record in a light most favorable to the plaintiffs, Mr. and Mrs. Reynolds, we find that a qualified immunity exists because no jury could find that it was objectively unreasonable for Nimal to believe that her filing of the petitions did not violate any federally protected rights. Summary judgment is granted to defendant Nimal with respect to the Reynolds' claims.

### 2. The Infant's Claims Against Defendant Nimal

In the complaint's fourth cause of action, ¶¶ 46–63, wherein the claims against Ms. Nimal are described, the first mention of the child's claims are at ¶ 61: "That notwithstanding such knowledge, defendants insisted on bringing the charges and in seeking removal of the child from said plaintiffs' home, resulting in multiple physical injuries to the child and emotional and mental injury to the child and plaintiff grandparents." Under the circumstances described above, including a lack of consensus among the professionals and a recommendation that the child be removed from her grandparents' home until a proper determination could be made, we find that defendant Nimal's qualified immunity protects her from suit by the infant in this case. Similarly, as with the Reynolds' claims, no jury could find that it was objectively unreasonable for Nimal to believe that her filing of the petitions did not violate any federally protected right. Apparently, Nimal acted in the only way possible at the time to protect the child's interests. Summary judgment is granted to Nimal with respect to the claims by the infant.

### 3. Plaintiffs' Claims Against Defendants Berger & Nugent

While defendants Berger and Nugent similarly have a qualified immunity for their actions performed in the scope of their duties, we find that summary judgment may be granted at this time to Nugent only.

In charging that these defendants both "failed to investigate" the Reynolds' allegations of sexual abuse and "permitted and encouraged unsupervised visitation" between Elizabeth and her mother, the plaintiffs assert that Berger and Nugent "knew or should have known" that their actions exposed the child to the risk of sexual abuse and constituted a "willful violation [sic] of plaintiffs' rights" under federal law. Complaint ¶¶ 66, 68, 69, 72.

Involvement by Berger and Nugent in this case differs in time. Mrs. Reynolds contends that she first "reported neglect and suspected sexual abuse of Elizabeth ... [to defendant Berger] in May, 1984." Reynolds Aff. ¶ 8. However, neither Berger's report of that investigation, nor her affidavit describing that event, mentions any claim other than neglect. See n. 1 supra and Berger Aff. ¶ 4(i). Berger first states her personal knowledge of sexual abuse allegations as arising from a report by Mrs. Reynolds to the Child Protective Service on June 16, 1986. Id. at ¶ 4(vii). Since the events of her earlier involvement are not adequately dealt with in defendant Berger's submission, her summary judgment motion must be denied as to both the grandparents and the infant plaintiff at this time without prejudice to renewal upon the filing of further affidavits addressing the specific details of Ms. Berger's participation in this case from May 1984 until June 1986, including when she first became aware of the sexual abuse charges and what actions she took thereafter.

Nugent, however, was not involved in the case until August 1986 when the Child Protective Service was ordered to conduct an investigation. See Reynolds Aff. ¶ 14, Berger Aff. ¶ 4(xi), and Nugent Aff. ¶ 5. No professional who examined the child—not even the psychotherapist chosen by Mrs. Reynolds and appointed by the Family Court—documented any evidence of abuse until February 1987 when Elizabeth was examined by Nurse Harrison. See Exhibits A–C attached to Nimal Aff., Exhibits C–I attached to Berger Aff., and supra. Mrs.

Reynolds states that Nugent and Berger sat at a court hearing in September 1986 snickering and laughing knowing full well that we could hear them and they certainly were aware of how terribly upset we were, especially with the reading of that distorted report and also with the fact that they closed the case as unfounded and that the sexual abuse of Elizabeth would continue.

Reynolds Aff. ¶ 16. Such actions, even if true, are not material to the issue of whether Nugent willfully violated the plaintiffs' rights. As Nugent became involved in this case in August 1986, her "failure to investigate" or "permitt[ing] and encourag[ing] unsupervised visitation" cannot rise to a willful constitutional violation in the face of the record which strongly demonstrates the lack of consensus among the professionals who examined the child between August 1986 and February 1987. Any viable claim against Ms. Nugent, on the basis of the facts of her participation, may be made in negligence only, a claim over which this Court has no jurisdiction. But even if willful action is found, we find under *Robison* that Nugent has established a qualified immunity from suit in this case because the record precludes a jury from finding that it was objectively unreasonable for her to believe she violated no established federally protected right. Accordingly, Nugent's motion for summary judgment is granted as to all plaintiffs.

### 5. DEFENDANT DSS (THIRD CAUSE OF ACTION)

■ The plaintiffs claim that the Rockland County Department of Social Services "failed to investigate such charges properly which resulted in further and ongoing sexual abuse ... [and] improperly ... allowed and encouraged defendant Catherine Strunk to have unsupervised visitation and/or inadequately supervised visitation with the child which resulted in further sexual abuse ..." Complaint ¶¶ 41–42.

Under *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), a local government will not be liable under § 1983 "unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* at 691. The plaintiffs have neither pleaded nor shown by affidavit any facts which indicate that the alleged deficiencies were the product of official government policy. Accordingly, summary judgment is granted to the DSS.

### 6. DEFENDANT CATHERINE STRUNK (FIRST CAUSE OF ACTION) DEFENDANT KEVIN STRUNK (SECOND CAUSE OF ACTION)

These defendants, proceeding *pro se*, move to dismiss the complaint as "a frivolous and malicious lawsuit." Strunks' Notice of Motion to Dismiss.

The first cause of action alleges that Catherine Strunk violated the infant plaintiff's civil rights by sexually abusing her and by acting with the other defendants to cause "all of the plaintiffs['] physical mental and emotional harm, trauma, pain, anguish and expense." Complaint ¶ 28–31. The second cause of action alleges that Kevin Strunk knew or should have known of the abuse, but that he failed to prevent it" ... which, resulted in multiple physical injuries to the child and emotional and mental injury to the child and plaintiff grandparents," and that "such actions or inactions ... violated the civil rights" of the child. Complaint ¶ 34–38. The eighth cause of action alleges that all the defendants conspired "to deprive plaintiffs ... of their civil rights," that "defendants Catherine and Kevin Strunk falsely accused plaintiff grandparents of such abuse," an act which caused the subsequent court proceedings against the grandparents. Complaint ¶ 90–97.

■ Plaintiffs do not deal with this motion in their submissions. In considering whether the plaintiffs have sufficiently pleaded a § 1983 action against the Strunks, the obvious question arises as to whether the Strunks' actions, if proven true, meet the statute's requirement of action "under color of [state] law." The United States Supreme Court has held that "[w]hen private parties make use of state

procedures with the overt, significant assistance of state officials, state action may be found." *Tulsa Professional Collection Services, Inc. v. Pope,* —— U.S. ——, ——, 108 S.Ct. 1340, 1344–1345, 99 L.Ed.2d 565 slip op. at 7 (S.Ct. April 19, 1988). *See also Hughes v. Patrolmen's Benevolent Association of the City of New York et al.,* 850 F.2d 876, 880–81 (2d Cir.1988) (District court's denial of motion to dismiss § 1983 action upheld because an allegation of facts sufficient to establish a private party's willing participation in a joint activity with the State or its agents constitutes "state action.") Therefore, if it is proven, as alleged, that the Strunks willfully accused the grandparents falsely of the abuse and those false accusations became the sole basis for the recommendation to remove the infant from the plaintiffs' home and for the state court proceeding which required Mr. and Mrs. Reynolds to rebut the prima facie case against them, then the Strunks could be said to have acted under color of state law to deprive the plaintiffs of their rights under § 1983. Accordingly, the motion to dismiss is denied.

■ However, since defendants' motion to dismiss is submitted in the form of Mrs. Strunk's unsworn statement, it must additionally be considered as a motion for summary judgment. Such a motion must clearly be denied because, as described below, the record presented to the Court is inadequate to determine that the Strunks did not act willfully to deprive the plaintiffs of any federal rights.

The Strunks' motion to dismiss provides no information about the allegation of false accusations but emphasizes Ms. Strunk's perception that many of the professionals involved in the case were alligned with her mother and biased against her. The statement also lacks any specific information regarding Mr. Strunk's involvement in the situation. *See* Defendants' Motion to Dismiss ¶¶ 1–17. The record does indicate that Catherine Strunk "did not really believe that her mother was abusing the child, and she so stated on the record," Transcript of Proceedings, May 12, 1987, at page 6, however, it is unclear whether the Family Court proceeding against the grandparents was instituted on the basis of Ms. Strunk's accusations alone or whether it was mandated by § 1046 of the Family Court Act in the light of the professionals' lack of agreement as to who had abused the child. Accordingly, we find that the Strunks have not put forth sufficient undisputed facts to mandate granting them summary judgment at this time.

## 7. CONCLUSION

This Court previously dismissed the complaint against defendant Dr. Sklar. The Court herein dismisses the complaint against defendant Carol Barbash who has absolute immunity in suits of this kind, and against defendant Rockland County Department of Social Services. We grant summary judgment to defendants Noah Weinberg (individually and as Commissioner of the DSS), Julie Nimal and Cathy Nugent, and deny summary judgment at this time to defendant Joan Berger without prejudice to renewal upon filing additional affidavits as described above. We deny the motion by defendants Catherine and Kevin Strunk, whether construed as a motion to dismiss or as a motion for summary judgment.

The naming of some of the defendants herein, especially Sklar and Barbash, raises serious questions in the Court's view whether the imposition of Rule 11 sanctions would be warranted. Although no application for such sanctions has been made, the Court has the obligation under Rule 11 to consider *sua sponte* whether they should be imposed.

Since this action will in any event continue as to those defendants whose motions have been denied, we reserve on the question and will accord counsel an opportunity to brief and be heard on this matter after all aspects of the proceedings have been terminated.

SO ORDERED.