**Nancy Lou Thomas MAZOR, Plaintiff,**

v.

**May SHELTON, Director, Department of Social Services, Washoe County, Nevada, et al., Defendants.**

**Nancy Lou Thomas MAZOR, individually, and on behalf of Craig Christopher Thomas, a minor, Petitioner,**

v.

**May SHELTON, Director, Washoe County Department of Social Services, State of Nevada, et al., Respondent.**

Nos. C–85–2945–CAL, C–85–2997–CAL.

United States District Court, N.D. California.

Feb. 18, 1986.

Leland F. Seid, San Francisco, Cal., for plaintiff.

Thomas A. Watrous, Gordon, DePraga, Watrous & Pezzaglia, Martinez, Cal., for Jornlin A. Banks.

David R. Grundy, Hibbs, Roberts, Lemons & Grundy, Reno, Nev., for Shelton, Lane, Mendoza, Walker and Hunke.

## AMENDED OPINION FOR SUMMARY JUDGMENT AND DISMISSAL

LEGGE, District Judge.

### I.

Case No. C–85–2945–CAL is a civil rights action brought pursuant to 42 U.S.C. §§ 1983, 1985, 1986.

Plaintiff has named Nevada and California residents as defendants: May Shelton, Director, Department of Social Services, Washoe County, Nevada; Mills Lane, District Attorney, Washoe County; Victoria Mendoza, Deputy District Attorney, Washoe County; Gail Walker and Carol Humke, Washoe County social workers; Chester P. Thomas, plaintiff's ex-husband and Washoe County resident; Robert E. Jornlin, Director, Department of Social Services, Con-tra Costa County, California; and Olive Banks, social worker in the Contra Costa County Child Protective Service's emergency response unit.[1]

Plaintiff alleges in the complaint that defendants conspired to deprive her of her constitutional right to custody of her three minor children. The record indicates plaintiff specifically claims that defendants took custody of one minor son without her knowledge or consent. This Court has jurisdiction pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3) (1982).

On September 6, 1985, this court dismissed the Nevada defendants because it lacked personal jurisdiction. Plaintiff has not served defendant Chester P. Thomas and stated in open court that she did not intend to serve him. Therefore, the only defendants remaining before this court are defendants Banks and Jornlin of the Contra Costa County Social Services Department.

Defendants Banks and Jornlin have moved to dismiss plaintiff's complaint and for summary judgment. Defendants contend that they are immune from § 1983 liability because their actions were taken within the scope of their authority and discretion.

### II.

The following facts are uncontested in the record:

Plaintiff is the natural mother of three children. The children lived with plaintiff in Washoe County, Nevada until April 15, 1983. On that date, the District Attorney, upon the request of the Department of Social Services, filed a petition for temporary custody of plaintiff's three children. The petition alleged that the children were without proper care and control. The juvenile court then held a hearing and ordered the Department of Social Services to place one child in county detention and send the

---

1. The Contra Costa County Child Protective Service is a political subdivision of the County's Department of Social Services.

two remaining children to their adoptive father, defendant Chester P. Thomas.

Some time thereafter, plaintiff moved to Contra Costa County, California. Thomas later phoned plaintiff and requested that she remove her twelve year old son, Craig Christopher, from Thomas' home. Plaintiff returned to Nevada, took custody of Craig and brought him to California. Legal custody of Craig, as determined by the Nevada court, remained with Thomas.

On November 22, 1984, a Contra Costa County mental health therapist reported to the Contra Costa County Child Protective Services that plaintiff had been brought to the county hospital in a manic state. Plaintiff apparently suffered delusions and had been under psychiatric treatment. The hospital authorities subsequently transferred plaintiff to a psychiatric hospital for intensive treatment. The mental health therapist informed Protective Services that plaintiff was unable to care for Craig. On November 26, 1984, defendant Banks of the County's Child Protective Service interviewed Craig and confirmed the reported information about plaintiff. The boy told Banks that he wanted to return to his father's home in Nevada. Banks reported the matter to the Contra Costa County Sheriff's Office, who immediately took Craig into temporary custody. Banks placed the boy in a foster home for the evening and contacted the Washoe County Department of Social Services because the Nevada court had awarded legal custody of Craig to Thomas. Washoe County arranged for Thomas to come to California to take custody of Craig. Thomas took custody of Craig and returned with him to Nevada.

### III.

Plaintiff contends that defendants, under color of state law, removed her son from her custody without a proper hearing and without her knowledge or consent, thereby violating her constitutional rights to due process and equal protection of the law.

Defendants claim immunity from liability under § 1983. Defendants maintain that they are entitled to the same absolute immunity as a prosecutor under *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). Plaintiff disagrees and argues that the defendants are entitled only to the qualified good-faith immunity defined in *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Defendant Jornlin also contends that there is no cause of action against him under § 1983.

### IV.

█ Throughout her involvement with this case, defendant Banks was a state employee acting under color of state law. Banks took custody of plaintiff's son pursuant to California state law. *See, e.g.,* CAL.WELF. & INST.CODE §§ 300–330, 16501.1 (Deering 1985); CAL.PENAL CODE § 11166 (Deering 1986). All of the allegations against Banks implicate federally protected rights. Plaintiff's desire to preserve the unity of her family is a protected liberty interest under the Fourteenth Amendment. *See, e.g., Duchesne v. Sugarman*, 566 F.2d 817, 824–25 (2d Cir.1977). "[F]reedom of personal choice in matters of ... family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment." *Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 639–40, 94 S.Ct. 791, 796, 39 L.Ed.2d 52 (1974). Plaintiff has alleged a § 1983 cause of action against defendant Banks, unless she is immune from such an action for reasons discussed below.

█ Turning first to the claims against defendant Jornlin, the court notes that plaintiff's complaint is void of specific allegations against defendant Jornlin. Instead, the complaint focuses on Banks; it alleges that she committed the constitutional violations while under the authority and jurisdiction of Jornlin, the Director of the Department of Social Services. Plaintiff does not allege, in either the complaint or the summary judgment proceedings, that Jornlin personally participated in the events. His only potential liability arises under the theory of respondeat superior.

However, respondeat superior is not a basis for imposing liability under section 1983. *Monell v. Department of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). Plaintiff must establish personal responsibility. *Duchesne v. Sugarman,* 566 F.2d at 830. Plaintiff's complaint and summary judgment papers fail to allege the requisite personal liability or Jornlin's involvement in the alleged constitutional violations. Plaintiff therefore has not stated a § 1983 cause of action, and this Court grants summary judgement in favor of defendant Jornlin.

### V.

Section 1983 makes liable "every person" who under color of state law deprives another person of his civil rights. By its sweeping terms, § 1983 "creates a species of tort liability that on its face admits of no immunities." *Imbler v. Pachtman,* 424 U.S. at 417, 96 S.Ct. at 988. Nevertheless, the Supreme Court has determined that Congress did not intend to "abolish wholesale all common-law immunities" when it enacted § 1983. *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967). The Court has consistently recognized that immunities may limit the availability of relief in section 1983 litigation. *Tower v. Glover,* 467 U.S. 914, 104 S.Ct. 2820, 2825, 81 L.Ed.2d 758 (1984), *Imbler v. Pachtman,* 424 U.S. at 417–19, 96 S.Ct. at 988–989.

 The Supreme Court has recognized two types of immunity defenses: absolute and qualified. Absolute immunity is accorded to government officials who perform judicial or quasi-judicial functions. These officials must be "intimately associated" with the judicial process. *Id.,* 424 U.S. at 430–32, 96 S.Ct. at 994–96. Absolute immunity shields such public officials from § 1983 liability as long as they act within the scope of their duties. For example, courts protect legislators in their legislative functions, (*Tenney v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951)); judges in their judicial functions,

(*Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967)); prosecutors in their adjudicative functions, (*Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)), and the President of the United States, (*Nixon v. Fitzgerald,* 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982)). Courts grant absolute immunity because it is essential to protect the official's special or adjudicative function. *Butz v. Economou,* 438 U.S. 478, 508–17, 98 S.Ct. 2894, 2911–16, 57 L.Ed.2d 895 (1978); *Imbler v. Pachtman,* 424 U.S. at 435, 96 S.Ct. at 997.

 Public officials also have a qualified or "good-faith" immunity, which provides protection to certain public officers for "decisions made in the good-faith exercise of their professional responsibilities." *Sellars v. Procunier,* 641 F.2d 1295, 1300 (9th Cir.1981). Courts grant public officials varying degrees of qualified immunity, "the variation being dependent upon the [official's] scope of discretion and responsibilities" and the circumstances existing at the time the official took the alleged action. *Scheuer v. Rhodes,* 416 U.S. at 247, 94 S.Ct. at 1692. Thus, both subjective and objective tests determine the extent of the official's good-faith immunity. *Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396 (1982); *Wood v. Strickland,* 420 U.S. 308, 321, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975).

The Supreme Court has granted some immunities based upon their existence at common law. The Court has found that the history of some immunities "was so firmly rooted in the common law and was supported by such strong policy reasons that 'Congress would have specifically so provided had it wished to abolish the doctrine.'" *Owen v. City of Independence,* 445 U.S. 622, 637, 100 S.Ct. 1398, 1408, 63 L.Ed.2d 673 (1980), citing *Pierson v. Ray,* 386 U.S. at 555, 87 S.Ct. at 1218, and discussing *Tenney v. Brandhove,* 341 U.S. at 376, 71 S.Ct. at 788.

The Court has granted other immunities based upon a test of "functional comparability." *Butz v. Economou,* 438 U.S. at

512–17, 98 S.Ct. at 2913–16. The Court has compared the functions of certain officials to the functions of analogous officials who enjoyed immunity under common law. *Id.* at 510–17, 98 S.Ct. at 2912–17; *Imbler v. Pachtman,* 424 U.S. at 423 n.20, 96 S.Ct. at 991 n. 20. In *Butz v. Economou,* the Supreme Court emphasized that the nature of the official's function, not his or her status determines whether an official enjoys absolute or qualified immunity. 438 U.S. at 511–12, 98 S.Ct. at 2913. *See Mitchell v. Forsyth,* —— U.S. ——, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Anderson v. Boyd,* 714 F.2d 906, 909 (9th Cir.1983).

Immunity for social workers was not recognized at common law. In fact, the social work profession did not exist in 1871 when Congress first enacted section 1983. This court, therefore, must analyze the issue of a social worker's immunity based upon the Supreme Court's test of functional comparability.

Defendant Banks argues that her functions as a social worker are analogous to the functions performed by a prosecutor, and therefore, she is entitled to the same immunity accorded a prosecutor under *Imbler v. Pachtman.* In *Imbler,* the Supreme Court granted absolute immunity to prosecutors acting within the scope of their prosecutorial duties. 424 U.S. at 420, 96 S.Ct. at 990. The Court reasoned that prosecutors perform a quasi-judicial function when they decide whether to prosecute. *Id.* at 438, 96 S.Ct. of 998. After they decide to initiate criminal proceedings, prosecutors act in a quasi-judicial capacity as they present the state's case. The Supreme Court noted that if disgruntled defendants could sue, prosecutors might be less inclined to pursue the goals of law enforcement. Instead, the prosecutors might subject themselves to a form of "self-censorship" to avoid liability. The Court wrote:

> [I]f the risk of having to defend a civil damage suit is added to the deterrent against such conduct already provided by criminal laws against perjury and subordination of perjury, the risk of self-cen-

sorship becomes too great. This is particularly so because it is very difficult if not impossible for attorneys to be absolutely certain of the objective truth or falsity of the testimony which they present.

*Id.* at 439–40, 96 S.Ct. at 999. Thus, the threat of litigation could affect the independent performance of the prosecutors' duties. *Id.* at 423, 96 S.Ct. at 991. The Court further reasoned that vexatious lawsuits for malicious prosecution would divert prosecutors' attention from law enforcement to their own defense. The Court concluded that this distraction might adversely affect the judicial system.

■ Applying the reasoning of *Imbler* to the present case, this court concludes that the role of a social worker in the care of minors is sufficiently analogous to the role of a prosecutor to warrant absolute immunity. Like prosecutors, social workers for children perform quasi-judicial functions. In order to fulfill their duties, social workers must exercise discretion. Just as the prosecutor must collect and analyze evidence, a social worker must investigate information about alleged child abuse or neglect. Based upon the information gathered, the social worker must decide whether to file court proceedings for minors' health and welfare. By filing proceedings, the social worker initiates the judicial process and therefore performs a function similar to a prosecutor. In addition, social workers must make decisions about the temporary or protective custody of minors. In order to protect the minors, these decisions must often be made on an emergency basis. Like prosecutors, it is "very difficult if not impossible" for social workers to be absolutely certain whether the information on which they act is objectively true. *Id.,* at 440, 96 S.Ct. at 999.

It is essential that social workers perform their duties to minors without fear of intimidation from dissatisfied parents. If courts allow retaliatory suits, social workers would be inclined to act only in cases in which they are absolutely certain that the alleged conduct occurred. But absolute

certainty is not always available in situations where the circumstances require an immediate decision to remove a child from a home. Without the benefit of immunity, social workers' attention would shift from protecting abused or neglected children to avoiding vexatious litigation. This shift could threaten the health and safety of an abused or neglected minor.

While the United States Supreme Court has not addressed the question of a social worker's immunity under § 1983, a few lower courts have considered the issue. However, those courts have not produced a uniform answer. For example, in *Doe v. County of Suffolk*, 494 F.Supp. 179 (E.D. N.Y.1980), and *Whelehan v. County of Monroe*, 558 F.Supp. 1093 (W.D.N.Y.1983), two district courts in New York issued contrary opinions concerning a social worker's immunity. In *Doe v. County of Suffolk*, the court held that a social worker, who was entitled to good-faith immunity under New York law, enjoyed no more than qualified good-faith immunity in a § 1983 claim. 494 F.Supp. at 183. The court reasoned:

> Like a prosecutor [the social worker] begins a prosecution, but, unlike a prosecutor, she has virtually no discretion in the matter. Given information warranting such a prosecution she must proceed. Once in court, she does not try the case; that duty devolves upon an attorney employed by the County. Thus, [defendant's] function is more like that of a policeman than a prosecutor. She learns of a violation, files a complaint (petition), and makes herself available to testify. Once the petition is filed, it is for others to determine how far the matter will proceed.

*Id.* at 183.

In *Whelehan v. County of Monroe*, the court held social workers absolutely immune from liability under § 1983, because it deemed their child protective duties to be functionally comparable to the prosecutors'

adjudicative duties. 558 F.Supp. at 1098. Contrary to *Doe v. County of Suffolk*, the court in *Whelehan v. County of Monroe* noted that social workers must exercise discretion at critical points in cases of suspected child abuse or neglect. The court reasoned that social workers first must decide whether the available information warrants removal of a child from the home. Social workers then must determine the method by which the authorities will remove the child. Finally, social workers must decide whether to file a petition charging child abuse or neglect, thereby initiating family court proceedings. The court wrote:

> The great importance of the child-protective function served by these defendants is beyond question. If these defendants, and others who serve like functions in society, were forced to execute their duties with one eye constantly regarding the possibility of incurring liability for their conduct, the detriment to society and the judicial system would be at least as great as if they were prosecutors....

*Id.* at 1098.

This court agrees with the reasoning and conclusion of the court in *Whelehan v. County of Monroe.*[2] The alternative of qualifying a social worker's immunity disserves the broader public interest in protecting abused or neglected children.

> As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought ... better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.

*Imbler v. Pachtman*, 424 U.S. at 428, 96 S.Ct. at 994 (quoting *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir.1949), *cert. denied*, 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950)).

Absolute immunity will not leave a genuinely harmed plaintiff without redress.

---

**2.** *See also Kurzawa v. Mueller*, 732 F.2d 1456 (6th Cir.1984); *Pepper v. Alexander*, 599 F.Supp. 523, 526–27 (D.N.M.1984).

Various post-hearing remedies are available. For example, parents in a child custody proceeding can appeal or otherwise challenge the legality of the proceeding itself. Parents can seek custody orders in the state court which has jurisdiction over the child. Finally, parents can seek agency review and perhaps bring a state suit. Further, a social worker is subject to professional discipline within the Social Services Department.[3] These safeguards "undermine the argument that the imposition of civil liability is the only way to insure that [social workers] are mindful of the constitutional rights" of the parents accused of child abuse or neglect. *Id.* 424 U.S. at 429, 96 S.Ct. at 994.

Plaintiff's complaint and summary judgment papers have not produced any competent evidence that Banks acted outside the scope of her professional authority and discretion. Banks performed her child protective functions. She took custody of plaintiff's son pursuant to information that plaintiff was institutionalized and could not care for her son. She cooperated with Nevada authorities, the state which had ordered Craig's legal custody, in arranging placement for Craig until his father arrived in Nevada. There is nothing in the record to suggest that she was acting outside her quasi-judicial role. *Compare, Dodd v. Spokane County,* 393 F.2d 330 (9th Cir.1968); *Robichaud v. Ronan,* 351 F.2d 533 (9th Cir.1965).

Summary judgment should be entered in favor of Banks.

### VI.

Case No. C–85–2997–CAL purports to be a habeas corpus action regarding the custody of Craig. Plaintiff asks this court to order the Nevada authorities to deliver custody of Craig to plaintiff and to otherwise determine alleged breaches of constitutional rights regarding the decisions on Craig's legal custody made by the Nevada court.

This court questions whether it has the power to entertain orders for awards of custody of a minor; those are usually matters for determination by state courts. In addition, the state court involved here is located outside of this district. Those questions need not be addressed however, since plaintiff has not taken any action to serve process in this case, or to otherwise prosecute it, since it was filed in April 1985. This action will therefore be dismissed without prejudice, for plaintiff's failure to serve process and to prosecute.

---

3. *See* CAL.BUS. & PROF.CODE §§ 9023, 9024 (Deering 1985).