[No. B039807. Second Dist., Div. One. May 2, 1990.]

ELENE H. et al., Plaintiffs and Appellants, v.
COUNTY OF LOS ANGELES et al., Defendants and Respondents.

## COUNSEL

Burge and Strid, Lawrence A. Strid for Plaintiffs and Appellants.

Morris, Polich & Purdy, Robert S. Wolfe, Steven D. Manning, Douglas J. Collodel and Beth A. Kahn for Defendants and Respondents.

## OPINION

TAYLOR, J.*— ▮▮▮▮ By first amended complaint, plaintiff Elene H., acting individually and as guardian ad litem for her minor children, Christopher and Jennifer, sought damages under 42 United States Code section 1983, alleging violation of federal civil rights, in connection with a child abuse investigation.[1]

---

\* Assigned by the Chairperson of the Judicial Council.

[1] That statute provides, in pertinent part, that "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Thus section 1983 permits suits for damages for deprivation of federally protected rights against local governmental officials. These individuals may be sued in their official capacities for depriving plaintiffs of rights, privileges and immunities secured by the Constitution or laws of the United States, where such deprivations occur without due process of law. (See *Pyne* v. *Meese* (1985) 172 Cal.App.3d 392, 404 [218 Cal.Rptr. 87].)

Named as defendants were three employees of the Los Angeles County Sheriff's Department, deputy sheriffs Dan Dohner, Gilbert Callahan and Joyce Homes Jablonsky.[2]

The three defendants answered the complaint and sought summary judgment, asserting both absolute and qualified immunities for their conduct. Plaintiff opposed summary judgment. After hearing, the trial court awarded defendants summary judgment on the ground that the defendants were entitled to both absolute and qualified immunity from civil suit.

Judgment was entered on February 10, 1989. Plaintiff filed a premature notice of appeal from the trial court's minute order of January 6, 1989. Pursuant to California Rules of Court, rule 2(c), we deem the notice of appeal taken from the subsequently entered judgment and review on the merits.

STATEMENT OF FACTS

On Tuesday, May 7, 1985, nine-year-old Christopher H. was attending Laurel Elementary School in Whittier, California. The child was in the third grade. He had been absent from school on Monday, the previous day, purportedly because he had "overslept." When he appeared on Tuesday, his teacher observed bruises around both of his eyes and on his face. She sent him to the school nurse.

The school nurse, Patricia Lee, examined Christopher's face, concluded there was a possibility of child abuse, and contacted Carmen Navarro, a social worker for Los Angeles County. Navarro also observed Christopher's physical condition and asked Christopher what had caused it. Christopher told her he had been hit by a tennis ball while playing during the previous weekend.

The social worker called the Los Angeles County Sheriff's Department, which dispatched two deputies, Dohner and Callahan, to the school. Both the social worker and the school nurse expressed the opinion to the deputies that the child's injuries could be due to child abuse.

Each of the deputies talked to Christopher alone. Each of the deputies noted that Christopher had "black eyes," eyes surrounded by colored bruises. In addition, there were lateral bruise lines running from the left eye

---

[2] In her first complaint, plaintiff had attempted to allege state causes of action against Los Angeles County and other institutional defendants but, after law and motion proceedings, the state causes of action were dismissed, leaving only the federal claim against the three deputy sheriffs.

to the child's temple, as well as scratches on his nose. Christopher told the story about the tennis ball, and then added that he had also been slapped by his sister Jennifer, aged 14 months.

Both deputies noticed that when discussing his bruises, Christopher spoke hesitantly, refusing to make eye contact; in contrast, when discussing school or sports, Christopher was relaxed and talkative.

Deputy Callahan thought Christopher was hiding something or protecting someone; he did not believe that the bruises had been caused by either a tennis ball or by Christopher's infant sister. Christopher expressed to Deputy Callahan his fear of punishment by his mother for the "trouble" he was causing.

The deputies formed the opinion that Christopher was a victim of child abuse and took him and his sister into custody pursuant to Welfare and Institutions Code sections 300 and 305, subdivision (a).[3]

The children were taken to La Mirada Hospital where they were examined by an emergency room physician, Dr. Vega, who also thought Christopher had been physically abused. Both children were temporarily detained, Christopher in foster care and Jennifer at MacLaren Hall.

On Wednesday, May 9, 1985, Deputy Joyce Jablonsky, who specialized in child abuse investigation, was assigned to the case by the sheriff's department. She reviewed the complaint report prepared by Deputy Callahan and interviewed Christopher at the foster home where she examined his face. Christopher still had purplish bruises around his eyes.

Christopher told Jablonsky his grandmother had put ice on his face after the "tennis ball" incident. Deputy Jablonsky interviewed Christopher's grandmother, who denied any knowledge about the "tennis ball" incident or having treated Christopher with ice. She did state that Christopher might have been injured on Sunday night during an altercation between the child and his mother, which occurred when Christopher refused to help with the dishes.

---

[3] Welfare and Institutions Code section 300 (operative until Jan. 1, 1989) defines a dependent child in various ways; included, in subdivision (d), is one "[w]hose home is an unfit place for him by reason of neglect, cruelty, depravity, or physical abuse of either of his parents. . . ."

Welfare and Institutions Code section 305 provides that "Any peace officer may, without a warrant, take into temporary custody a minor: (a) When the officer has reasonable cause for believing that the minor is a person described in Section 300. . . ."

It was the policy of the Sheriff's Department to take into protective custody all siblings living in the same household as a suspected child abuse victim, for obvious reasons.

Deputy Jablonsky also interviewed Christopher's mother, who denied that Christopher had had any facial bruises or marks on Monday, when he was home from school. Christopher's mother said she knew nothing about the "tennis ball" incident, but conceded that the child might have sustained slight injury from her Sunday night dispute with him.

Deputy Jablonsky talked to the school nurse, Patricia Lee. Ms. Lee told the deputy she did not believe that Christopher's injuries had been caused by a tennis ball.

Deputy Jablonsky was particularly concerned that Christopher had received no medical attention for his eyes until he returned to school. She believed that it was unlikely that two adults, Christopher's mother and grandmother, with whom he and Jennifer lived, would have seen him for over 24 hours and not noticed the injuries to his face; Christopher's mother and grandmother both denied that the boy had black eyes. Deputy Jablonsky was of the opinion that there was sufficient legal cause to recommend the commencement of juvenile dependency proceedings for both children, pursuant to Welfare and Institutions Code sections 300, subdivision (d) (operative until Jan. 1, 1989) and 305, subdivision (a), and so informed the appropriate child welfare officers.

The children were in protective custody for eight days and were released home to their mother. Thereafter, the mother brought this action on behalf of herself and the children against the three deputy sheriffs involved in the investigation. As indicated, the trial court held that the deputy sheriffs' conduct was immunized and awarded them summary judgment.

### STANDARD OF REVIEW

Summary judgment procedure is governed by Code of Civil Procedure section 437c and provides, in pertinent part, that "[a]ny party may move for summary judgment in any action or proceeding if it is contended that the action has no merit or that there is no defense thereto. . . . [¶] (b) The motion shall be supported by affidavits, declarations, admissions, answers to interrogatories, depositions and matters of which judicial notice shall or may be taken. . . . [¶] (c) The motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

██ As the California Supreme Court explained in *Mann* v. *Cracchiolo* (1985) 38 Cal.3d 18, 35-36 [210 Cal.Rptr. 762, 694 P.2d 1134], "[t]he summary judgment procedure, inasmuch as it denies the right of the adverse party to a trial, is drastic and should be used with caution. [Citation.] Summary judgment is properly granted only when the evidence in support

of the moving party establishes that there is no issue of fact to be tried. [Citation.] 'The moving party bears the burden of furnishing supporting documents that establish that the claims of the adverse party are entirely without merit on any legal theory.' [Citation.] 'The affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of summary judgment should be resolved against granting the motion.' [Citation.] '. . . [I]ssue finding rather than issue determination is the pivot upon which the summary judgment law turns.' [Citation.]"

■ Both the trial court and a reviewing court are guided by the principles of summary judgment procedure set forth above, but the reviewing court conducts independent review of the trial court's resolution of questions of law. ■ The instant case turns on resolving such questions; since it involves a federally derived cause of action and the asserted immunity of local law enforcement officials, federal law governs. (*Martinez* v. *California* (1980) 444 U.S. 277, 284 [62 L.Ed.2d 481, 488-489, 100 S.Ct. 553]; see particularly, fn. 8.)

### CONTENTIONS OF THE PARTIES

Plaintiffs contend that the materials presented to the trial court showed that the level of Christopher's injuries when taken into protective custody was in dispute, and thus there was a triable issue of fact which should have precluded summary judgment. In addition, plaintiffs point out that there was also a factual dispute about the contents of the interview that Deputy Sheriff Jablonsky had with Christopher's grandmother and that this too raised a factual issue about the reasonableness of the deputy sheriffs' conduct during this investigation.

Defendants contend that their conduct was totally immunized and, if not totally immunized, was within the range of qualified immunity for law enforcement officers recognized by federal law. (*Malley* v. *Briggs* (1986) 475 U.S. 335 [89 L.Ed.2d 271, 106 S.Ct. 1092]; *Anderson* v. *Creighton* (1987) 483 U.S. 635 [97 L.Ed.2d 523, 107 S.Ct. 3034].)

We address these issues, dealing with the asserted immunity of the deputies first.

### DISCUSSION

### I.

■ The defendants claim absolute immunity, citing the recent case of *Jenkins* v. *County of Orange* (1989) 212 Cal.App.3d 278 [260 Cal.Rptr. 645], where the Court of Appeal concluded, in the context of a federal section 1983 action, that a social worker who had initiated a child abuse

investigation was totally immunized under state law from civil suit. The *Jenkins* court particularly relied on Government Code section 821.6.

It is true in California that state law confers not only the mandatory duty to report possible child abuse on certain individuals but imposes criminal sanctions against them if they do not discharge that duty. (Pen. Code, §§ 11166, 11172.) The individuals specifically named by law who must report are "any child care custodian, health practitioner, or employee of a child protective agency who has knowledge of or observes a child in his or her professional capacity or within the scope of his or her employment whom he or she knows or reasonably suspects has been the victim of child abuse. . . ." (Pen. Code, § 11166, subd. (a).) In addition, Penal Code section 11172 provides for the immunity of these individuals from criminal or civil suit.

However, in our view, the matter of the immunity of local governmental officials from a suit pursuant to 42 United States Code section 1983, must be determined by federal rather than state law.

We turn therefore to federal authorities. In *Mazor* v. *Shelton* (N.D.Cal. 1986) 637 F.Supp. 330, a federal district court held that pursuant to federal law, a social worker initiating legal proceedings concerning alleged child abuse or neglect was absolutely immunized from a section 1983 action because the social worker was performing "a function similar to a prosecutor"—and prosecutors, in order to preserve their independence of judgment, enjoy absolute immunity pursuant to federal law, described as absolute *quasi-judicial* immunity. (*Imbler* v. *Pachtman* (1976) 424 U.S. 409 [47 L.Ed.2d 128, 96 S.Ct. 984].) *Mazor* relied also on *Whelehan* v. *County of Monroe* (W.D.N.Y. 1983) 558 F.Supp. 1093, which had reached the same result. The *Mazor-Whelehan* holdings have now been adopted in many of the federal circuits, including our own Ninth Circuit: see *Meyers* v. *Contra Costa County Dept. of Soc. Serv.* (9th Cir. 1987) 812 F.2d 1154, cert. den. 484 U.S. 829 [98 L.Ed.2d 59, 108 S.Ct. 98]; *Coverdell* v. *Dept. of Social & Health Services* (9th Cir. 1987) 834 F.2d 758.

The rationale for providing such immunity is the obvious societal interest, reflected in the statutes enacted by the California Legislature, in protecting children from abuse and neglect, and recognition that the process by which social workers arrive at the conclusion that they must initiate dependency or other proceedings concerning children is very similar to that in which prosecutors engage.

In the instant case, the section 1983 suit, however, was directed not at social workers or prosecutors, but at deputy sheriffs who as peace officers took the H. children into custody after conducting an investigation into the

situation presented. The question is whether these deputies were also entitled to the absolute quasi-judicial immunity afforded to prosecutors and social workers.

The defendants contend that the concept of immunity is not based on the *title* held by the governmental representative involved but on the *function* performed; it is pointed out that particularly Deputy Jablonsky specialized in child abuse and neglect investigation for the Los Angeles County Sheriff's Department and should be entitled to the same protection provided to social workers under federal law. The argument of defendants was addressed in *Robison* v. *Via* (2d Cir. 1987) 821 F.2d 913), but the reviewing court concluded that taking children into protective custody was not a quasi-judicial, prosecutorial function, and that law enforcement officers engaging in such activity have qualified rather than absolute immunity for their actions.

*Mazor* recognized that " '[F]reedom of personal choice in matters of . . . family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment.' [Citation.]" (*Mazor* v. *Shelton, supra*, 637 F.Supp. 330, 332.) Our state law has not specifically directed that absolute immunity attach to the conduct of child abuse investigations by local law enforcement officers. Since federal law appears to favor qualified rather than absolute immunity for local peace officers, we decline to hold that the defendants' conduct was *totally* immunized from liability.

## II.

In *Anderson* v. *Creighton, supra*, 483 U.S. 635, the United States Supreme Court held that in order to protect local law enforcement officers from unfounded or frivolous section 1983 actions, it was imperative that the existence or nonexistence of qualified immunity for their actions be resolved early in legal proceedings because of the disruptive effect discovery could have on the defendants' continuing duties.

*Anderson* observed that the concept of qualified immunity struck a balance between competing interests of individual constitutional rights, including those protected by the Fourth Amendment, United States Constitution, and of encouraging observance of the law by law enforcement officers. It held that a particular officer's conduct could be justified by an objective standard, that of whether it was legally reasonable. Clearly the behavior of a law enforcement officer which is grossly incompetent or demonstrates knowing disregard for established legal rights is not protected by qualified immunity.

■ In the case at bench, the defendants were following the law, not breaking or disregarding it. Their behavior met the objective standard of legal reasonableness and exemplified appropriate protective concern toward an injured child. On this basis we uphold the trial court's award of summary judgment.

## III.

Plaintiffs' contention that the affidavits submitted in opposition to the defendants' motion for summary judgment precluded the trial court's ruling is without merit. As *Anderson* v. *Creighton* makes clear, the defendants were entitled to the benefit of the qualified immunity as a matter of law, so long as some, although not necessarily all, reasonable police officers would have acted as they did. Absolute certainty was not required of the defendants; as was stated in *Malley* v. *Briggs, supra*, 475 U.S. 335, 341 [89 L.Ed.2d 271, 278], "if officers of reasonable competence could disagree on this issue, immunity should be recognized."

Thus the factual issues plaintiffs attempted to generate in the case at bench by presenting affidavits downgrading the child's injuries, or disputing what the child's grandmother told the police, or what an expert thought other police officers might have done under similar circumstances are irrelevant in the context of this litigation, because even giving plaintiff the benefit of the doubt on factual discrepancies, the uncontroverted facts were sufficient to justify finding qualified immunity as a matter of law.

### DISPOSITION

The judgment is affirmed.

Devich, Acting P. J., and Ortega, J., concurred.