[No. A063468. First Dist., Div. Two. Dec. 12, 1994.]

MATTHEW GENSBURG et al., Plaintiffs and Appellants, v.
FRED MILLER, as Deputy Director, etc., et al., Defendants and
Respondents.

**COUNSEL**

Rockhill, Schaiman & Carr and Michael E. Adams for Plaintiffs and Appellants.

Daniel E. Lungren, Attorney General, Robert L. Mukai, Chief Assistant Attorney General, Marvin Goldsmith, Assistant Attorney General, Tyler B. Pon and Bradley A. Solomon, Deputy Attorneys General, Sedgwick, Detert, Moran & Arnold and Douglas M. Moore, Jr., for Defendants and Respondents.

**OPINION**

**SMITH, J.**—In this federal civil rights action against employees of the state Department of Social Services (State DSS or Department), the County of San Mateo (County) and the County Department of Social Services (County DSS), arising out of the suspension of appellants' foster home license, the trial court sustained a demurrer without leave to amend on the ground that the defendants were absolutely immune from civil liability for their alleged misconduct.

We are in agreement with the trial court and affirm.

### BACKGROUND

On appeal from a judgment of dismissal after sustaining a demurrer without leave to amend, we assume the truth of all well-pleaded material

facts, but not contentions, deductions or conclusions of law. It is error to sustain the demurrer if plaintiff has stated a cause of action under any legal theory, and it is an abuse of discretion to sustain a demurrer without leave to amend if there is a reasonable possibility that the defect can be cured by amendment. (*Aubry* v. *Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967 [9 Cal.Rptr.2d 92, 831 P.2d 317].) Mindful of these settled rules, we summarize the allegations of the third amended complaint.

### The Parties

Plaintiffs, Matthew and Pamela Gensburg (the Gensburgs) are husband and wife who operate a foster home out of their residence in the County. Plaintiff Nancy Curry is the natural mother of two children who, at certain times, resided as foster children in the Gensburgs' home.

Defendants Stuart R. Oppenheim, Pat Crawford and Marjorie Knoop (the County defendants) are all employees of County DSS. Oppenheim is deputy program director at County DSS; Crawford heads the licensing unit maintained by the State DSS for supervision of licensed foster parents; Knoop was the official in the licensing unit responsible for overseeing the Gensburgs' license.

### First Cause of Action

Beginning in 1988, the County defendants began a vendetta designed to drive the Gensburgs out of their foster care business. The motivation for the vendetta was the County defendants' distaste for the Gensburgs' practice of accepting foster children from divergent racial and ethnic backgrounds and also retaliation for criticisms which Matthew Gensburg had publicly aired against them.

The vendetta started when the County defendants stopped placing foster children with the Gensburgs in 1989, after which the Gensburgs began receiving placements from the San Francisco Department of Social Services.

In 1990, Matthew Gensburg was involved in an altercation at a construction site, "wholly unconnected" to the Gensburgs' foster care business. The County defendants wrote a report regarding the altercation and forwarded it to State DSS, urging revocation of the Gensburgs' foster care license. The report included "defamatory statements" to the effect that the Gensburgs were bigoted and violent toward their foster children. As a result, the State DSS filed an accusation seeking to revoke the Gensburgs' license.

From June to September 1991, the County defendants violated established departmental policies by conducting a "malicious exploratory investigation"

into the Gensburgs' foster care activities. This included procuring and forwarding to State DSS negative statements which defendants knew to be "false, misleading and materially inaccurate."

As a result of the County defendants' actions, in September 1991 the Department amended the accusation to add 30 more charges and imposed a temporary license suspension on the Gensburgs which remained in effect until February 1992.

The case against the Gensburgs was the subject of an 11-day hearing before an administrative law judge, and resulted in a recommendation that all charges be dismissed. In January 1992, the State DSS revised the judge's decision to uphold several of the charges and to place the Gensburgs on probation. The State DSS's decision was ultimately reversed in a writ of mandate action in superior court, which ordered reinstatement of the Gensburgs' license.

As a proximate result of the defendants' conduct the Gensburgs incurred legal fees and loss of income from their foster care business and injury to their reputations. Curry and her children, as well as the Gensburgs' minor children, suffered psychological trauma and humiliation.

### Second Cause of Action

The second cause of action is directed against Fred Miller, who is deputy director of the Community Care Licensing Division of State DSS, and Steven A. Shaffer, staff attorney in the Department's office of chief counsel.

After preparing the accusation against the Gensburgs in June 1991, Shaffer joined with the County defendants in their malicious, "improperly aggressive investigation." Specifically, in an "overzealous and unprofessional manner" he encouraged witnesses to make negative statements which he either knew or was substantially certain were false and misleading. Shaffer then presented these statements to Miller, who amended the accusation to add 30 false charges against the Gensburgs. Shaffer also encouraged third parties to file a harassment suit against the Gensburgs.

On September 17, 1991, the State DSS defendants caused to be issued an administrative order pursuant to Health and Safety Code section 1550, subdivision (e), suspending the foster care license of the Gensburgs until after the completion of formal administrative proceedings. The suspension resulted in the removal of five foster children from the Gensburgs' home.

The actions of the State DSS defendants violated the Gensburgs' constitutional rights, including their liberty and property interests in pursuing their

occupation as licensed foster parents. Said defendants acted maliciously in that objectively reasonable public officials would have known that their actions violated the Gensburgs' constitutional rights and were unsupported by probable cause.

### Third Cause of Action

The third cause of action alleges a conspiracy between the County defendants and the State DSS defendants to violate the Gensburgs' civil rights under 42 United States Code section 1983.

### APPEAL

### I

### State Immunity

Government Code section 821.6 (section 821.6) provides that "A public employee is not liable for injury caused by his [or her] instituting or prosecuting any judicial or administrative proceeding within the scope of his [or her] employment, even if he [or she] acts maliciously and without probable cause."

In *Jenkins* v. *County of Orange* (1989) 212 Cal.App.3d 278 [260 Cal.Rptr. 645] (*Jenkins*), the court found that this section confers absolute immunity on a social worker from all state-based causes of action arising out her actions in investigating child abuse allegations, initiating dependency proceedings and removing a child from his custodial parent. Likening the social worker's role to that of a prosecutor, the court held that the defendant's conduct fell within the ambit of the statute. (*Id.*, at pp. 283-284.)

■ There appears little doubt that the actions of the State DSS and County defendants here were protected by the immunity set forth in section 821.6. Although the conduct here concerned actions taken in the investigation and prosecution of license suspension and revocation proceedings against foster parents rather than dependency proceedings, both types of conduct fulfill the same compelling statutory purpose—the preservation of the welfare and safety of dependent minor children. (See Health & Saf. Code, § 1521.6, subd. (a).)

Thus, any state or common law causes of action are barred by section 821.6.

## II

### *Immunity Under Section 1983*

The complaint, however, is framed strictly as an action under section 1983 of the Civil Rights Act. (42 U.S.C. § 1983 [section 1983]).[1] ▮ Because section 1983 was intended by Congress as a remedy to prevent unconstitutional acts by state and local officials, we must look to federal law to determine the scope of immunity of governmental officials from a section 1983 suit. (*Alicia T.* v. *County of Los Angeles* (1990) 222 Cal.App.3d 869, 878 [271 Cal.Rptr. 513]; accord, *Elene H.* v. *County of Los Angeles* (1990) 220 Cal.App.3d 1445, 1452 [269 Cal.Rptr. 783].)

In *Imbler* v. *Pachtman* (1976) 424 U.S. 409 [47 L.Ed.2d 128, 96 S.Ct. 984] (*Imbler*), the United States Supreme Court, following a tradition of common law precedent, held that prosecutors enjoy absolute immunity from section 1983 suits for their activities in initiating and presenting the state's case, as well as for conduct "intimately associated with the judicial phase of the criminal process . . . ." (424 U.S. at pp. 427-430 [47 L.Ed.2d at pp. 141-143].)

Subsequently in *Burns* v. *Reed* (1991) 500 U.S. 478, 492-493 [114 L.Ed.2d 547, 564-565, 111 S.Ct. 1934] (*Burns*) the high court was confronted with a section 1983 suit alleging that a prosecutor had procured false testimony at a probable cause hearing to obtain a search warrant and had also given erroneous legal advice to the police. The high court held that the prosecutor was absolutely immune from liability for the former activity but enjoyed only qualified immunity[2] for the latter, since the giving of advice to the police was not closely connected to the judicial phase of the criminal process.

The contours of prosecutorial immunity were more finely delineated in *Buckley* v. *Fitzsimmons* (1993) __ U.S. __ [125 L.Ed.2d 209, 113 S.Ct. 2606] (*Buckley*). There, prosecutors, allegedly frustrated by their inability to obtain an indictment, manufactured false evidence inculpating the defendant and

---

[1]This section provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

[2]Unlike absolute immunity, which shields the defendant no matter how egregious or intentional the conduct, qualified immunity shields only that conduct of a governmental official which he or she reasonably believed to be lawful in light of the clearly established law and facts of the case. (*F.E. Trotter, Inc.* v. *Watkins* (9th Cir. 1989) 869 F.2d 1312, 1315.)

held a press conference at which they slandered him. In a five-to-four decision the high court recalled the "functional approach" to government official immunity articulated in *Burns* "which looks to 'the nature of the function performed, not the identity of the actor who performed it.'" (*Id.* at p. __ [125 L.Ed.2d at p. 223], quoting *Forrester* v. *White* (1988) 484 U.S. 219, 229 [98 L.Ed.2d 555, 566-567, 108 S.Ct. 538].) While reiterating that prosecutorial immunity extends to acts preparatory to the commencement of a prosecution, even outside the courtroom (__ U.S. at p. __ [125 L.Ed.2d at p. 226]), the court held that by working "hand in hand" with sheriff's detectives to fabricate inculpatory evidence, the prosecutors acted not as advocates but as investigators, functionally no different than that of the sheriff or police department. (*Id.*, at p. __ [125 L.Ed.2d at p. 227].) Thus, the conduct was entitled to only qualified immunity.

### III

#### *Prosecutorial Immunity Applied to Social Workers*

*Imbler*-type immunity has been extended by most federal courts to social workers performing their statutorily authorized functions. In *Meyers* v. *Contra Costa County Dept. of Soc. Serv.* (9th Cir. 1987) 812 F.2d 1154, certiorari denied 484 U.S. 829 [98 L.Ed.2d 59, 108 S.Ct. 98] (*Meyers*), the Ninth Circuit, following a line of earlier federal court decisions (e.g., *Kurzawa* v. *Mueller* (6th Cir. 1984) 732 F.2d 1456, 1458; *Mazor* v. *Shelton* (N.D.Cal. 1986) 637 F.Supp. 330; *Whelenhan* v. *County of Monroe* (W.D.N.Y. 1983) 558 F.Supp. 1093), held that social workers were entitled to absolute immunity when performing "quasi-prosecutorial functions connected with the initiation and pursuit of child dependency proceedings." (812 F.2d at p. 1157.) Drawing a parallel between the social worker's role and that of a prosecutor, the court noted: "Although child services workers do not initiate criminal proceedings, their responsibility for bringing dependency proceedings, and their responsibility to exercise independent judgment in determining when to bring such proceedings, is not very different from the responsibility of a criminal prosecutor. The social worker must make a quick decision based on perhaps incomplete information as to whether to commence investigations and initiate proceedings against parents who may have abused their children. The social worker's independence, like that of a prosecutor, would be compromised were the social worker constantly in fear that a mistake could result in a time-consuming and financially devastating civil suit." (*Id.*, at p. 1157.)

*Meyers* has been followed in California. In *Jenkins*, the court held that social workers were absolutely immune from liability for improperly investigating allegations of child abuse, misrepresenting facts to the juvenile court

and refusing to consider exculpatory evidence. (212 Cal.App.3d 278, 286.) In *Alicia T.* v. *County of Los Angeles*, *supra*, 222 Cal.App.3d 869, the court used *Meyers*'s reasoning in dismissing a suit brought against social workers who " 'without probable cause or reasonable suspicion' " removed a minor from the custody of her parents. (*Id.*, at p. 875.) "It is necessary to protect social workers in their vital work from the harassment of civil suits and to prevent any dilution of the protection afforded minors by the dependency provisions of the Welfare and Institutions Code. Therefore, social workers must be absolutely immune from suits alleging the improper investigation of child abuse, removal of a minor from the parental home based upon suspicion of abuse and the instigation of dependency proceedings." (*Id.*, at p. 881.)

With this background we turn to the allegations at bar.

IV

*State Defendants*

1. *The License Suspension*

██  The conduct of both State DSS defendants in temporarily suspending the Gensburgs' license under Health and Safety Code section 1550[3] is entitled to absolute immunity. In implementing disciplinary action to protect the welfare of foster children under the Gensburgs' care, the State DSS defendants were acting in a prosecutorial role.

The Gensburgs argue that the State DSS defendants lost their protection as prosecutors because "they were not acting as advocates, but rather performing an administrative function ancillary to the license revocation proceedings."

The argument proves too much. To the extent Miller and Shaffer were exercising quasi-judicial functions in invoking the license suspension, their conduct was equally protected. State officials making a decision whether to invoke suspension remedies pursuant to statute are acting in a quasi-judicial capacity, and are entitled to judicial immunity from section 1983 claims. (*Butz* v. *Economou* (1978) 438 U.S. 478, 511-512 [57 L.Ed.2d 895, 918-920, 98 S.Ct. 2894].)

---

[3]Section 1550.5 of the Health and Safety Code authorizes the Director of the Department to temporarily suspend any license prior to a formal hearing when, in the opinion of the Director, "the action is necessary to protect residents or clients of the facility from physical or mental abuse, abandonment, or any other substantial threat to health or safety." At the time of the events in question this provision was part of section 1550, subdivision (e). (38B West's Ann. Health & Saf. Code (1990) § 1550 p. 489 & (1995 supp.) § 1550.5, pp. 194-195.)

Nor are we convinced by the Gensburgs' contention that in temporarily suspending their license the State DSS defendants deprived them of due process, since their acts were not subject to judicial scrutiny. The temporary suspension provisions of section 1550 have been upheld against constitutional attack. (*Habrun* v. *Department of Social Services* (1983) 145 Cal.App.3d 318, 321-322 [193 Cal.Rptr. 340].) Since the State DSS defendants acted pursuant to their lawful statutory authority, they may not be subject to civil liability. (*Coverdell* v. *Dept. of Social & Health Services* (9th Cir. 1987) 834 F.2d 758, 762-764; cf. *Chalkboard, Inc.* v. *Brandt* (9th Cir. 1989) 902 F.2d 1375, 1379 [social workers bypassing statutory procedure not entitled to absolute judicial or prosecutorial immunity].)

### 2. *Miller*

All of Miller's conduct falls within the purview of *Imbler/Meyers* prosecutorial immunity. Based on the information reported to him by Shaffer and the County DSS, Miller filed an accusation against the Gensburgs and instituted suspension proceedings. Such activities are those of a prosecutor in the traditional and classical sense. Although such disciplinary proceedings are held before an administrative agency rather than a court of law, clearly they are quasi-judicial in nature and operation. State officials performing the functions of prosecutors in administrative proceedings are entitled to absolute immunity within the meaning of *Imbler*. (*Demery* v. *Kupperman* (9th Cir. 1984) 735 F.2d 1139, 1143, cert. den. (1985) 469 U.S. 1127 [83 L.Ed.2d 803, 105 S.Ct. 811].)

### 3. *Shaffer*

Although Shaffer's conduct presents a more difficult question, we reach the same conclusion. In committing the alleged tortious acts, Shaffer, as staff attorney in the office of chief counsel, was acting in an investigative role, gathering the factual information for Miller to prepare his case. Prosecutorial immunity is not limited to the initiation of formal proceedings. While the Supreme Court in *Buckley* held that administrative and investigative functions "that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity," it also noted that "[w]e have not retreated . . . from the principle that *acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity.*" (___ U.S. at p. ___ [125 L.Ed.2d 209, 226], italics added.)

Contrary to the Gensburgs' argument, the label "investigative" is not determinative of the boundaries of the prosecutor's immunity. The prosecutor's role may include investigatory activities in preparation for the commencement of judicial or quasi-judicial proceedings. When it does, the

shield of prosecutorial immunity follows. "[A]bsolute prosecutorial immunity attaches to the actions of a prosecutor if those actions were performed as part of the prosecutor's preparation of his case *even if they can be characterized as investigative or administrative.*" (*Gobel* v. *Maricopa County* (9th Cir. 1989) 867 F.2d 1201, 1204, quoting *Demery* v. *Kupperman, supra,* 735 F.2d 1139, 1143, internal quotation marks omitted, italics added.)

"Preparing to initiate a prosecution may necessitate obtaining, reviewing and evaluating evidence; absolute immunity may attach when these functions are necessary so that a prosecutor may fulfill his function as an officer of the court." (*Snell* v. *Tunnell* (10th Cir. 1990) 920 F.2d 673, 693, cert. den. (1991) 499 U.S. 976 [113 L.Ed.2d 719, 111 S.Ct. 1622].) Shaffer's conduct in interviewing witnesses and evaluating reports and complaints in preparation for filing an accusation, falls within the scope of the prosecutorial role. "[T]o grant a prosecutor absolute immunity for the decisions to initiate and pursue a prosecution while subjecting him to liability for action taken to secure the information necessary to make those decisions 'would only foster uninformed decisionmaking and needless actions.'" (*Marx* v. *Gumbinner* (11th Cir. 1988) 855 F.2d 783, 792 [prosecutors entitled to absolute immunity for interviewing witnesses and crime victim prior to grand jury proceedings].)[4]

Thus, the cases cited by the Gensburgs are distinguishable in that the nonprivileged conduct engaged in by the prosecutors consisted of acts *not* intimately connected to the initiation of judicial proceedings.

The demurrer was properly sustained as to Shaffer.

V

*County Defendants*

We next address the liability of the County defendants. In deciding the question of whether their acts are cloaked with *Imbler/Meyers* immunity, it is important to note the official responsibilities of each defendant as alleged in the complaint. Two of them are employed by County DSS's licensing unit, whose duty it is to supervise licensed foster parents and homes (Crawford and Knoop). The other is deputy program director of County DSS (Oppenheim).

---

[4]While it is true that "encouraging" neighbors of the Gensburgs to file a harassment suit against them would not fall within the scope of the immunity we describe, the demurrer was nevertheless properly sustained because such conduct, standing alone, does not amount to a constitutional deprivation sufficient to state a section 1983 cause of action.

■ The Gensburgs contend that the County defendants cannot partake of prosecutorial immunity because they had no power to institute or prosecute license revocation proceedings. That may be literally true. But the *Imbler* test focuses not on the defendants' status but on the function they are performing while engaged in the alleged misconduct. Here, the County defendants were operating in a role functionally equivalent to that of the prosecutors whom they served.

Foster homes are strictly regulated by the state. (Health & Saf. Code, § 1530.5 et seq.; tit. 22, Cal. Code Regs. (Regs.), § 87000 et seq.) The State DSS is empowered to suspend or revoke the license of any foster home on the grounds specified in Health and Safety Code section 1550. (Regs., § 87042.) Since the State cannot oversee all foster homes, the responsibility of supervising them falls on public or private foster family agencies (Regs. § 88000 et seq.; § 88005, subd. (a)(1).) A foster family agency is duty-bound to monitor the activities of its licensed foster homes. Complaints regarding child abuse or any other activities affecting certification of foster homes must be investigated and written reports prepared. (*Id.*, §§ 88050, 88051.)

The complaint alleges that the County defendants' responsibility was to oversee the Gensburgs' foster care license, including the investigation of complaints and the forwarding of investigative reports to State DSS, "for the latter to determine, on the basis of such investigation reports, whether to initiate and conduct formal . . . proceedings to revoke, suspend, or impose probations upon the involved foster care licensees . . . ."

The same immunity which protects prosecutors and social workers investigating child abuse should apply to County defendants when performing their duties to monitor and report on the activities of foster licensees to state prosecutorial officials.

The present case is closely analogous to *McMartin* v. *Children's Institute International* (1989) 212 Cal.App.3d 1393 [261 Cal.Rptr. 437], certiorari denied (1990) 494 U.S. 1057 [108 L.Ed.2d 766, 110 S.Ct. 1526] (*McMartin*). There it was alleged that Children's Institute International (CII), an investigative service, was hired by a city and county to investigate allegations of child abuse at a preschool and report its findings. CII's report concluded that numerous acts of abuse had occurred and that plaintiffs were the probable perpetrators. Claiming they were wrongfully indicted as a result of CII's activities, plaintiffs sued under numerous theories including civil rights violations pursuant to section 1983. (212 Cal.App.3d at pp. 1398-1399.)

The Court of Appeal held that CII's activities were "quasi-prosecutorial functions within the scope of their authority and were required by state law"

and were therefore entitled to absolute immunity from civil rights claims. (*McMartin, supra*, 212 Cal.App.3d 1393, 1405.)

*McMartin's* reasoning applies with even greater force here. County defendants were not solicited by the Department to file reports concerning the Gensburgs—they were in fact performing the very functions granted to them by laws of this state in reporting to the prosecutorial arm of State DSS on matters affecting the state's decision on commencing disciplinary action against the Gensburgs' foster home license. Were these actions not shielded by absolute immunity, we would be jeopardizing the foster children whom the statutes seek to protect. "Should we hold a state or social worker acting within the scope of his or her employment is not absolutely immune from suits arising from the voluntary intervention to protect a child, we would indirectly eliminate the protection afforded to children. The state's interest in preventing child abuse will be diminished due to fear of retaliatory suits." (*Jenkins, supra*, 212 Cal.App.3d 278, 287.)[5]

We conclude that County defendants were entitled to absolute immunity for their actions which caused State DSS to initiate proceedings against the Gensburgs' foster care license. (See *Hennessey* v. *State of Wash., Dept. of Social* (E.D.Wash. 1985) 627 F.Supp. 137 [social worker absolutely immune from civil rights liability for giving false information to prosecutor who initiated dependency proceedings].)

## VI

### *County Liability and Conspiracy*

**(5)** The demurrer was properly sustained as to the County as well. When section 1983 liability of a municipality is predicated on privileged conduct of its employee acting within the scope of his or her employment, the municipality is protected by the same immunity. (*Jenkins, supra*, 212 Cal.App.3d 278, 287-288.)

■ The conspiracy cause of action fails for a similar reason. A conspiracy cannot be alleged as a tort separate and apart from the wrong it is organized to achieve. Since the underlying wrongs are subject to privilege, defendants cannot be held liable for conspiracy to commit them. (*McMartin, supra*, 212 Cal.App.3d 1393, 1406.)

---

[5]It is irrelevant that some of the conduct which is the focus of this suit concerned activities occurring outside the foster home and not necessarily connected to foster care. The statutory scheme allows the Department to take action against any licensee for conduct which is detrimental to the health, morals or safety of the children under his or her care, regardless of where it occurs. (*Adamson* v. *Department of Social Services* (1988) 207 Cal.App.3d 14, 22 [254 Cal.Rptr. 667].)

## DISPOSITION

The judgment is affirmed.

Kline, P. J., and Phelan, J., concurred.

A petition for a rehearing was denied January 11, 1995, and appellants' petition for review by the Supreme Court was denied March 2, 1995.